NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-4854-12T2

MICHAEL C. KAIN,

    Plaintiff-Appellant,

v.

GLOUCESTER CITY, GLOUCESTER
CITY SAIL, INC., ROBERT BEVAN,
and CHARLES REED, jointly,
severally, individually and
in the alternative,

    Defendants-Respondents.

| APPROVED FOR PUBLICATION |
| :---: |
| July 21, 2014 |
| APPELLATE DIVISION |

---

Argued March 18, 2014 — Decided July 21, 2014

Before Judges Fisher, Espinosa and O'Connor.

On appeal from Superior Court of New Jersey,
Law Division, Camden County, Docket No. L-5091-10.

Kenneth G. Andres, Jr., argued the cause for
appellant (Andres & Berger, P.C., attorneys;
Mr. Andres and Tommie Ann Gibney, of
counsel; Abraham Tran, on the briefs).

Francis X. Donnelly argued the cause for
respondents Gloucester City and Robert Bevan
(Mayfield, Turner, O'Mara & Donnelly, P.C.,
attorneys; Mr. Donnelly, of counsel; Robert
J. Gillispie, Jr., on the brief).

James W. Carbin argued the cause for
respondents Gloucester City Sail, Inc. and
Charles Reed (Duane Morris LLP, attorneys;
Mr. Carbin, of counsel and on the brief).

The opinion of the court was delivered by

ESPINOSA, J.A.D.

The plan or design immunity provision of the Tort Claims Act (TCA), N.J.S.A. 59:1-1 to :12-3, applies to injuries caused by "the plan or design of public property" approved "by the Legislature or the governing body of a public entity or some other body or a public employee exercising discretionary authority to give such approval . . . ." N.J.S.A. 59:4-6(a) (emphasis added). This case requires us to decide whether this provision exempts municipal defendants from liability for an allegedly dangerous condition in a pier designed by the Coast Guard and, specifically, whether the Coast Guard falls within the scope of the term, "some other body," under the statute. We decide that it does.

Plaintiff Michael Kain was a parent/chaperone for his sons' Boy Scout troop when they participated in a free educational sail provided by defendant Gloucester City Sail, Inc. (Gloucester City Sail) at the Gloucester City Pier a/k/a Freeman Pier (the pier). Plaintiff was injured when he stepped into an opening between the edge of the pier and its wooden bumpers as he was helping the last boy onto the "Northwind" schooner. He appeals from orders that granted the summary judgment motions of defendants on the grounds that his claims were barred by the TCA

and the Charitable Immunity Act, N.J.S.A. 2A:53A-7 to -11. We affirm.

The Coast Guard purchased the pier in the 1940s and renovated it by installing a bulkhead, consisting of 5/8" thick interlocking steel sheathing, around the outside perimeter of the pier. Wood timbers were installed as fenders to protect the sides of ships from banging against the steel sheathing. The resulting design left openings between the edges of the pier and the wooden bumpers every few feet along the perimeter of the pier. The Coast Guard operated the pier as a military base until 1991, when it deeded the pier to Gloucester City (the City).

In 2008, the City purchased the "Northwind" schooner, which was to be operated by Gloucester City Sail, a nonprofit corporation created for the purpose of providing maritime education to children. Defendant Charles Reed was the director of operations at Gloucester City Sail and captain of the Northwind. Defendant Robert Bevan, an aide to the mayor of the City, is a member of the board of directors of Gloucester City Sail.

The Northwind is docked at one of two locations depending upon tidal conditions. During high tide, it is docked at a floating dock installed by the City to facilitate the safe

boarding of boat passengers. However, at the time of the Boy Scout sail, it was low tide and so the Northwind was docked at the northeast corner of the pier. At this location, passengers board the schooner by a ladder from the side of the pier.

Both plaintiff and his wife were parents/chaperones for the free educational sail and two of their sons participated. Before they boarded, Reed gave a safety talk and advised the Boy Scout party that he would escort them individually across the pier and assist them in boarding via the ladder. Reed did not warn about the openings over the edge because he "felt no need to verbally say that" as they were obvious to observe. He guided the Boy Scout group, including plaintiff, past the pier's barricades and a safety fence with a "Keep Out Dangerous Pier Conditions" sign. Then, Reed stood on the pier at the top of the ladder while two crew members were positioned on the vessel at the bottom of the ladder to assist each of the passengers onto the schooner.

Reed helped six of the seven Boy Scouts down the ladder to the Northwind. When the last Boy Scout was being assisted onto the ladder by Reed, plaintiff was still on the pier. Reed had both of his hands on the child's hands. The other two crew members were holding the ladder on the deck of the boat waiting for the child to climb down. Then, without any instruction or

invitation, plaintiff approached Reed from behind to help. Plaintiff's left leg went off the edge of the pier and down into an 11" x 23" opening between the edge of the pier and the wooden fenders attached to the pier. Plaintiff sustained injuries, which included a severe fracture of his right ankle that required multiple surgeries.

Plaintiff filed a complaint based on premises liability against all defendants. Summary judgment was granted to defendants Gloucester City and Bevan on the ground that the claim was barred by the "design or plan" immunity provided by the TCA. Plaintiff's claims against defendants Gloucester City Sail and Reed were dismissed as barred by the Charitable Immunity Act.

In this appeal, plaintiff argues that summary judgment was erroneously granted to all defendants. He argues that the design and plan immunity afforded by the TCA did not apply to the City and Bevan (collectively, the municipal defendants) because: the pier was designed by the Coast Guard, which is not a "public entity" under the TCA; the Coast Guard's design did not consider the use of the pier by civilian pedestrians for recreational purposes; defendants instituted a new plan or design but failed to abide by their own plans; and defendants knew the pier was in a dangerous condition but failed to provide

appropriate warnings. He argues further that it was error to grant summary judgment based on design immunity because the City and Bevan failed to properly supervise the actions of Gloucester City Sail and Reed in the boarding of the Northwind. Plaintiff argues that the trial court erred in ruling that Gloucester City Sail and Reed were entitled to immunity under the Charitable Immunity Act because he was not a "beneficiary" of their charitable works and because Reed's actions were grossly negligent. Finally, plaintiff contends that summary judgment was improper because there were genuine issues of material fact as to defendants' liability.

In reviewing a summary judgment decision, we apply the same standard as the trial court. Murray v. Plainfield Rescue Squad, 210 N.J. 581, 584 (2012). Viewing the evidence "in a light most favorable to the non-moving party," we determine "if there is a genuine issue as to any material fact or whether the moving party is entitled to judgment as a matter of law." Rowe v. Mazel Thirty, LLC, 209 N.J. 35, 38, 41 (2012) (citing Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 529 (1995)). We review questions of law de novo, State v. Gandhi, 201 N.J. 161, 176 (2010), and need not accept the trial court's conclusions of law. Davis v. Devereux Found., 209 N.J. 269, 286 (2012).

The TCA provides general immunity for all governmental bodies except in circumstances where the Legislature has specifically provided for liability. See N.J.S.A. 59:1-2 and :2-1; Bell v. Bell, 83 N.J. 417, 423 (1980). "Under the Act, immunity is the norm, unless liability is provided for by the Act." Davenport v. Borough of Closter, 294 N.J. Super. 635, 637 (App. Div. 1996). The public entity bears the burden of proof for establishing immunity. Bligen v. Jersey City Hous. Auth., 131 N.J. 124, 128 (1993). In determining if a public entity is immune, courts first "identify the culpable cause of the accident and . . . ask if that 'identified cause or condition is one that the Legislature intended to immunize.'" Levin v. Cnty. of Salem, 133 N.J. 35, 43 (1993) (quoting Weiss v. N.J. Transit, 128 N.J. 376, 380 (1992)).

Plaintiff alleges that the holes between the edge of the pier and the wooden fenders attached to the pier constituted a dangerous condition known to defendants and unremediated by adequate warnings. Under the TCA, a "dangerous condition" is that which "creates a substantial risk of injury when such property is used with due care in a manner in which it is reasonably foreseeable that it will be used." N.J.S.A. 59:4-

1(a). Liability is permitted for an injury caused by a dangerous condition of a public entity's property if

> the plaintiff establishes that the property was in dangerous condition at the time of the injury, that the injury was proximately caused by the dangerous condition, that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred, and that either:
>
> a. a negligent or wrongful act or omission of an employee of the public entity within the scope of his employment created the dangerous condition; or
>
> b. a public entity had actual or constructive notice of the dangerous condition under section 59:4-3 a sufficient time prior to the injury to have taken measures to protect against the dangerous condition.
>
> [N.J.S.A. 59:4-2.]

The municipal defendants state they are entitled to the plan or design immunity provided by the TCA for a claim based upon this alleged defect. N.J.S.A. 59:4-6(a) states in pertinent part:

> a. Neither the public entity nor a public employee is liable under this chapter for an injury caused by the plan or design of public property, either in its original construction or any improvement thereto, where such plan or design has been approved in advance of the construction or improvement by the Legislature or the governing body of a public entity or some other body or a public employee exercising discretionary authority to give such approval or where such plan or design is

8                                                          A-4854-12T2

> prepared in conformity with standards previously so approved.

In order for the municipal defendants to avail themselves of this immunity, they must demonstrate that the condition that allegedly caused the injury was "an approved feature of the plan or design." Thompson v. Newark Hous. Auth., 108 N.J. 525, 533-34 (1987) (quoting Birchwood Lakes Colony Club, Inc. v. Borough of Medford Lakes, 90 N.J. 582, 599 (1982)). However, the public entity need not show that a particular feature of the plan had been considered and rejected. Thompson, supra, 108 N.J. at 537; see Manna v. State, 129 N.J. 341, 358 (1992) ("[I]mmunity for an original design does not fail because alternative options regarding the feature of concern . . . were not considered in the original plans."). Instead, the evidence must show merely that the entity had considered "the general condition about which a plaintiff complains in formulating the original plan or design." Luczak v. Twp. of Evesham, 311 N.J. Super. 103, 109 (App. Div.), certif. denied, 156 N.J. 407 (1998).

It is undisputed that the Coast Guard considered the need for the pier to be a "stable" working dock when it reconstructed the pier and designed the steel sheet pile bulkhead accordingly. This design was a "routine" Coast Guard design, and when the design was approved, the safety of workers who would walk along the sidewalks was considered. Although it was not designed

explicitly for use by civilian pedestrians, the pier was designed to be safe for persons boarding and disembarking from boats.

A

Plaintiff does not dispute that the alleged defect was part of a design approved by the Coast Guard. He argues, however, that immunity does not attach because the Coast Guard is not a "public entity" as defined in the TCA.

Importantly, although the immunity provided by the TCA is limited to a "public entity" or "public employee," the statute does not limit the approving authority that triggers the immunity to a "public entity" or "public employee." The TCA provides for design immunity based upon prior approval by other authorities as well, i.e., "the Legislature . . . or <u>some other body</u> or a public employee exercising discretionary authority to give such approval." <u>N.J.S.A.</u> 59:4-6(a) (emphasis added). As "some other body" is undefined in the statute, we must interpret that term to determine whether it applies to the Coast Guard here.

Our "primary task" in interpreting this language is "to effectuate the legislative intent in light of the language used and the objects sought to be achieved." <u>Bosland v. Warnock Dodge, Inc.</u>, 197 <u>N.J.</u> 543, 554 (2009). To do so, "we look first

to the plain language of the statute, seeking further guidance only to the extent that the Legislature's intent cannot be derived from the words that it has chosen." Pizzullo v. N.J. Mfrs. Ins. Co., 196 N.J. 251, 264 (2008). The statute's language is given its ordinary meaning and, if it is clear, "our task is to apply that language to the situation that confronts us." McGovern v. Rutgers, 211 N.J. 94, 108 (2012) (citing State v. Shelley, 205 N.J. 320, 323 (2011)). If the language of the statute fails to give such clear direction, "we look to extrinsic sources, including the legislative history, to determine the intent of the Legislature." Ibid. We are further required to construe the TCA "with a view to carry out" the Legislature's declaration "that public entities shall only be liable for their negligence within the limitations of [the TCA] and in accordance with the fair and uniform principles established" in the Act. N.J.S.A. 59:1-2.

In the statute, "some other body" is an alternative approving authority among the identified authorities that include a "public entity," which is defined as "the State, and any county, municipality, district, public authority, public agency, and any other political subdivision or public body in the State." N.J.S.A. 59:1-3. The term itself is broad and almost unlimited in scope, clearly designed to apply to entities

that do not fall within the definition of "public entity" yet perform the type of governmental function covered by the design immunity. The particular function targeted by this immunity provision, the approval of plans or designs for public projects, "is peculiarly a function of the executive or legislative branch of government and is an example of the type of highly discretionary governmental activity which the courts have recognized should not be subject to the threat of tort liability." See Report of the Attorney General's Task Force on Sovereign Immunity, Comment to N.J.S.A. 59:4-6, at 222 (May, 1972) (Task Force Comment to N.J.S.A. 59:4-6). The Legislature's use of the term "some other body" does not reflect an intent to exclude a "body" that exercises authority over the planning of public projects in the way the Coast Guard did here.

Although we refrain from concluding that the term has unlimited application, such limitations as are appropriate should be determined on a case-by-case basis. In this case, we conclude that the application of "some other body" to the Coast Guard is consistent with the objectives of the TCA and the principle that this immunity provision should be broadly applied. See ibid.

Plaintiff argues further that, even if the Coast Guard is considered an approving authority within the meaning of the TCA, the municipal defendants cannot "inherit" design immunity from the Coast Guard. They contend that design immunity was lost because (1) the pier was designed for military use and defendants have repurposed the pier for civilian and recreational purposes, and (2) defendants added safety measures to the pier but failed to adhere to the safety measures they introduced. These arguments lack merit.

Plaintiff's arguments fail "because they improperly attempt to circumvent the perpetual nature of plan-or-design immunity." Manna, supra, 129 N.J. at 354. "Once effective, the immunity is perpetual, and cannot be lost if later knowledge shows a design or plan to be dangerous, or later circumstances render it dangerous." Thompson, supra, 108 N.J. at 532 (quoting Margolis and Novack, Tort Claims Against Public Entities 70 (1986)). "That is, once the immunity attaches no subsequent event or change of conditions shall render a public entity liable on the theory that the existing plan or design of public property constitutes a dangerous condition." Task Force Comment to N.J.S.A. 59:4-6, supra, at 223. Immunity is preserved even if the design presents a dangerous condition in light of a new

context. <u>Seals v. Cnty. of Morris</u>, 210 <u>N.J.</u> 157, 180-81 (2012); <u>Thompson</u>, <u>supra</u>, 108 <u>N.J.</u> at 532-33; <u>see also</u> <u>Kolitch v. Lindedahl</u>, 100 <u>N.J.</u> 485, 497 (1985) (plan or design immunity protected the State from claims where a curve in a road built for a speed limit of thirty miles per hour became dangerous at a speed limit of fifty miles per hour); <u>Ciambrone v. State, Dep't of Transp.</u>, 233 <u>N.J. Super.</u> 101, 108-09 (App. Div.) (immunity preserved where timing of duly approved traffic signals became dangerous over time), <u>certif. denied</u>, 117 <u>N.J.</u> 664 (1989).

Here, immunity attached to the alleged design defect approved by the Coast Guard. That alleged defect remained unaltered by the additional measures introduced by the municipal defendants and unaffected by changes in the class of users from military to civilian or the fact that the pier was used for recreational purposes. The immunity was not, therefore, lost.

Moreover, design immunity bars plaintiff's claims that the municipal defendants are liable based upon other theories that relate to the alleged design defect. In <u>Rochinsky v. State, Dep't of Transp.</u>, 110 <u>N.J.</u> 399, 407-09 (1988), the Supreme Court articulated the proper relationship between the liability and immunity provisions of the TCA:

> The first substantive section of the Act establishes the analytical framework to be used in resolving questions of governmental immunity: "Except as otherwise provided by

this act, a public entity is not liable for an injury . . . ." <u>N.J.S.A.</u> 59:2-1(a). Further, "[a]ny liability of a public entity established by this act is subject to any immunity of the public entity and is subject to any defenses that would be available to the public entity if it were a private person." <u>N.J.S.A.</u> 59:2-1(b).

"[I]immunity is the dominant theme of the Act. . . . [When] an immunity applies, liability does not attach." <u>Civalier by Civalier v. Estate of Trancucci</u>, 138 <u>N.J.</u> 52, 59 (1994) (quoting <u>Weiss</u>, <u>supra</u>, 128 <u>N.J.</u> at 383). Because <u>N.J.S.A.</u> 59:2-1(b) "is intended to insure that any immunity provisions provided in the act or by common law will prevail over the liability provisions," <u>Report of the Attorney General's Task Force on Sovereign Immunity, Comment to N.J.S.A. 59:2-1</u>, at 210 (May, 1972) (Task Force Comment to <u>N.J.S.A.</u> 59:2-1), "the approach should be <u>whether an immunity applies and if not, should liability attach.</u>" <u>Ibid.</u>

Thus, even if plaintiff satisfies the elements of <u>N.J.S.A.</u> 59:4-2, the explicit grant of immunity for design or plan under <u>N.J.S.A.</u> 59:4-6 "will prevail over the liability provisions." Task Force Comment to <u>N.J.S.A.</u> 59:2-1, <u>supra</u>, at 210; <u>Weiss</u>, <u>supra</u>, 128 <u>N.J.</u> at 382; <u>see</u> <u>also</u> <u>Seals</u>, <u>supra</u>, 210 <u>N.J.</u> at 161-62 (observing that even if the plaintiff could satisfy all the elements of <u>N.J.S.A.</u> 59:4-2, he could only pursue this claim if his action was not barred by the plan or design immunity

A-4854-12T2

provision of N.J.S.A. 59:4-6); Gore v. Hepworth, 316 N.J. Super. 234, 245 (App. Div. 1998) (noting the general liability provision of N.J.S.A. 59:4-2 is "limited by the specific immunity sections"), certif. denied, 158 N.J. 70 (1999).

II

Plaintiff also argues that the trial court erred in ruling that Gloucester City Sail and Reed are entitled to immunity under the Charitable Immunity Act because (1) plaintiff was not a "beneficiary" under the statute, and (2) Reed was grossly negligent. N.J.S.A. 2A:53A-7 provides in pertinent part the following:

> a. No nonprofit corporation . . . organized exclusively for . . . charitable or educational purposes or its . . . volunteers shall, except as is hereinafter set forth, be liable to respond in damages to any person who shall suffer damage from the negligence of any agent or servant of such corporation . . . where such person is a beneficiary, to whatever degree, of the works of such nonprofit corporation . . . ; provided, however, that such immunity from liability shall not extend to any person who shall suffer damage from the negligence of such corporation . . . or of its agents or servants where such person is one unconcerned in and unrelated to and outside of the benefactions of such corporation . . . .

The Legislature has declared that the Charitable Immunity Act is remedial and should be "liberally construed so as to afford immunity . . . in furtherance of the public policy for

16

the protection of nonprofit corporations . . . organized for religious, charitable, educational or hospital purposes." N.J.S.A. 2A:53A-10.

Charitable immunity is an affirmative defense. Abdallah v. Occupational Ctr. of Hudson Cnty., Inc., 351 N.J. Super. 280, 288 (App. Div. 2002). The entity that claims immunity under the Charitable Immunity Act must demonstrate it "(1) was formed for nonprofit purposes; (2) is organized exclusively for religious, charitable or educational purposes; and (3) was promoting such objectives and purposes at the time of the injury to plaintiff who was then a beneficiary of the charitable works." Tonelli v. Bd. of Educ., 185 N.J. 438, 444-45 (2005) (quoting Hamel v. State, 321 N.J. Super. 67, 72 (App. Div. 1999)).

A

Gloucester City Sail is incorporated as a nonprofit organization, a tax exempt entity under 26 U.S.C.A. § 501(c)(3), for the purpose of providing maritime education. Plaintiff does not dispute that Gloucester City Sail qualifies as a charitable organization under the Charitable Immunity Act or that its purposes include educational, cultural, or religious purposes. Instead, he asserts he was not a "beneficiary" of its works.

> The established test for determining whether
> a party is a beneficiary of the works of a
> charity has two prongs. The first is that
> the institution pleading the immunity, at

the time in question, "was engaged in the performance of the charitable objectives it was organized to advance." The second is that the injured party must have been a direct recipient of those good works.

> [Ryan v. Holy Trinity Evangelical Lutheran Church, 175 N.J. 333, 350 (2003) (quoting Anasiewicz v. Sacred Heart Church, 74 N.J. Super. 532, 536 (App. Div.), certif. denied, 38 N.J. 305 (1962)).]

Our inquiry here focuses on the second of these prongs, which distinguishes between "persons benefiting from the charity," and persons who contribute to the charity "by virtue of their attendance or participation." Roberts v. Timber Birch-Broadmoore Athletic Ass'n, 371 N.J. Super. 189, 195-96 (App. Div. 2004). In Ryan, supra, the Court explained that the statute calls for a broad definition of "beneficiary,"

> as evidenced by the use of the words "to whatever degree" modifying the word "beneficiary" in the statute. Those who are not beneficiaries must be "unconcerned in and unrelated to" the benefactions of such an organization.
>
> [175 N.J. at 353 (quoting Gray v. St. Cecilia's Sch., 217 N.J. Super. 492, 495 (App. Div. 1987)).]

See also Orzech v. Fairleigh Dickinson Univ., 411 N.J. Super. 198, 205 (App. Div. 2009), certif. denied, 201 N.J. 443 (2010).

When the injured party is a direct recipient of the charity's good works "or accompanies a beneficiary to the event," the charitable immunity defense is available. Roberts,

supra, 371 N.J. Super. at 196. The Supreme Court found that a child, who was injured in a charitable organization's gymnasium, "was plainly a recipient" of the charity's "'benefactions,' even if only as a companion of his father and a spectator at his father's basketball game." Bieker v. Cmty. House of Moorestown, 169 N.J. 167, 180 (2001). We have also found that beneficiary status applies to a spectator at a Little League game, see Pomeroy v. Little League Baseball, 142 N.J. Super. 471, 475 (App. Div. 1976), and a wedding guest at a church, Anasiewicz, supra, 74 N.J. Super. at 537-38. No immunity exists, however, when the person who attends the charity's endeavor actually confers a benefit to the charity rather than receives one. DeVries v. Habitat for Humanity, 290 N.J. Super. 479, 492 (App. Div. 1996), aff'd o.b., 147 N.J. 619 (1997).

In this case, although plaintiff was a volunteer, he was present at the outing as a parent/chaperone for the Boy Scouts. The benefit he conferred as a volunteer was to the Boy Scouts, and not to the charity seeking immunity. In his capacity as both a parent and a chaperone for the group receiving the benefit of the educational sail, he cannot qualify as one "'unconcerned in and unrelated to' the benefactions of" Gloucester City Sail. Ryan, supra, 175 N.J. at 353 (quoting Gray supra, 217 N.J. Super. at 495). Therefore, charitable

immunity applied to both Gloucester City Sail and its volunteer, Reed. N.J.S.A. 2A:53A-7(a) (charitable immunity applies to the charity's "trustees, directors, officers, employees, agents, servants or volunteers").

B

Plaintiff also argues that charitable immunity should not apply here because Reed's actions were grossly negligent. This argument also lacks merit.

N.J.S.A. 2A:53A-7(c)(1) provides that charitable immunity does not apply to "any trustee, director, officer, employee, agent, servant or volunteer causing damage by a willful, wanton or grossly negligent act of commission or omission . . . ." Although the statute does not define gross negligence, the term is commonly associated with egregious conduct, see Stelluti v. Casapenn Enters., LLC, 408 N.J. Super. 435, 457 n.6 (App. Div. 2009), aff'd, 203 N.J. 286 (2010), and is used to describe "the upper reaches of negligent conduct." Parks v. Pep Boys, 282 N.J. Super. 1, 17 n.6 (App. Div. 1995).

Here, plaintiff argues that defendants' actions constitute reckless and grossly negligent behavior because they required civilian passengers to cross the pier with 11" x 23" openings and use an aluminum household ladder to board the Northwind in lieu of using the floating dock. In support, plaintiff refers

to the opinion of Wayne F. Nolte, Ph.D., P.E., his safety engineer expert, who opined that the "accident site was in a dangerous and hazardous condition" and "was totally unsafe and inappropriate for its intended use." Without identifying any misconduct by Reed, Nolte opined that "[t]he failure of the City of Gloucester City to comply with its own minimum standard requiring the elimination of holes in walking surfaces was palpably unreasonable and the cause of this accident."

As the trial court found, the alleged dangerous and hazardous condition of the openings relate to the original design of the pier, rather than a lack of care by Reed. We further agree with the trial court that Reed "actively engaged in the process of attempting to make this loading scenario safe." The proof is, therefore, insufficient to establish a level of wrongful conduct that would deprive Gloucester Sail and Reed of the immunity.

To the extent we have not discussed any arguments raised by plaintiff, we deem such arguments to lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4854-12T2