**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R.1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0616-15T1

JOAO ROCHA,

    Plaintiff-Appellant,

v.

STATE OF NEW JERSEY and
NEW JERSEY DEPARTMENT OF
TRANSPORTATION, their
agents, servants and/or
employees,

    Defendants-Respondents,

and

WAN-RU WU,

    Defendant.

_____

Argued May 8, 2017 — Decided June 2, 2017

Before Judges Haas and Geiger.

On appeal from Superior Court of New Jersey,
Law Division, Essex County, Docket No. L-3348-
13.

Richard A. Dunne argued the cause for
appellant.

Nicole T. Castiglione, Deputy Attorney
General, argued the cause for respondents
(Christopher S. Porrino, Attorney General,

attorney; Melissa H. Raksa, Assistant Attorney General, of counsel; Ms. Castiglione, on the brief).

PER CURIAM

Plaintiff Joao Rocha appeals from the trial court's August 28, 2015 order granting summary judgment to defendants, State of New Jersey and New Jersey Department of Transportation ("NJDOT"). We affirm.

## I.

We derive the facts from the summary judgment record. This matter arises out of a tragic motor vehicle accident occurring on May 9, 2011 at approximately 10:00 p.m. in the northbound express lanes of U.S. Routes 1 and 9 in Newark, New Jersey. Defendant Wan-Ru Wu was driving his sport utility vehicle from New York City to a hotel in Newark. Accompanying Wu were several passengers, one of whom was providing directions. Wu had never been to Newark before, was unfamiliar with Routes 1 and 9, and did not know where the hotel was located.

After determining that he was lost, Wu stopped the car at a gas station along Routes 1 and 9 for directions. Wu then proceeded on Routes 1 and 9 South, but passed the hotel. Wu then made a U-turn at a traffic light and proceeded on Routes 1 and 9 North. Still uncertain of where he was going, Wu turned onto a side street and turned back onto Routes 1 and 9 South. After driving some

distance, he took an overpass to reenter the local lanes of Routes 1 and 9 North.  After determining that he had once again missed the hotel, Wu pulled his vehicle over to the right shoulder.  Wu then proceeded to cross the local lanes, drive over a curb and concrete island that separated the local lanes from the express lanes of Routes 1 and 9 North, and proceeded southbound on the express lanes of Routes 1 and 9 North.  Wu continued driving in the wrong direction for twenty-eight seconds before colliding head-on with plaintiff's vehicle that was heading northbound.

Wu testified that he was tired, confused, and frustrated at the time of collision.  He knew it was improper to drive over the curb and concrete island, but did so anyway to save time getting to the hotel.  He presumed that his sport utility vehicle could traverse the curb and island easily because it was so low.

Plaintiff suffered serious injuries from the accident.  He brought action against Wu, the State, and NJDOT, alleging they were negligent.  Plaintiff settled his claims against Wu. Plaintiff claims that the State and NJDOT are liable under the New Jersey Tort Claims Act ("the Act"), N.J.S.A. 59:1-1 to 12-3, for an alleged dangerous condition created by the concrete island and adjoining three-and-one-half-inch curb, and for failing to warn drivers of the dangers they would confront if they attempted to

A-0616-15T1

mount, cross, or make a U-turn over the curbing separating the local and express lanes of Routes 1 and 9.

The local and express lanes of Routes 1 and 9 are separated by a concrete island consisting of two vertical curbs on each side with a span of concrete in between. The most recent set of design plans approved by the Office of the State Highway Engineer required a height of four inches. On the date of the incident, however, the vertical curbing measured three-and-a-half inches.

In 2010, the local lanes of Routes 1 and 9 North adjacent to the vertical curb were milled and resurfaced. This increased the height of the roadway by one-half-inch, thereby decreasing the exposed face of the vertical curb from four inches to three-and-a-half inches. However, the milling and resurfacing did not alter or remove the vertical curb itself.

NJDOT uses two national publications issued by the American Association of State Highway and Transportation Officials ("AASHTO") as a source when formulating its own guidelines on curb configurations. One is AASHTO's publication, <u>Geometric Design of Highways and Streets</u> (5th ed. 2004). Plaintiff relies on the following, somewhat misleadingly excerpted, language from that publication: "Vertical curbs may be either vertical or nearly vertical and are intended to discourage vehicles from leaving the

A-0616-15T1

roadway . . . [and] they range from 150 to 200 mm [6 to 8 in] in height."  Id. at 320.  AASHTO actually recommends:

> Vertical curbs may be either vertical or nearly vertical and are intended to discourage vehicles from leaving the roadway.  As shown in Exhibit 4-6A, they range from 150 to 200mm [6 to 8 in] in height.  Vertical curbs should not be used along freeways or other high-speed roadways because an out-of-control vehicle may overturn or become airborne as a result of an impact with such a curb.  Since curbs are not adequate to prevent a vehicle from leaving the roadway, a suitable barrier should be provided where redirection of vehicles is needed.
>
> [Ibid. (emphasis added).]

As we discuss, infra, this caveat regarding freeways and high-speed roadways is an important aspect of the AASHTO recommendation in the context of this case.

The second is AASHTO's publication, Roadside Design Guide (3d ed. 2006).  It contains the following similar relevant language regarding curbs:

> Vertical curbs are defined as those having a vertical or nearly vertical traffic face 150 mm [6 in.] or higher.  These are intended to discourage motorists from deliberately leaving the roadway.
>
> . . . .
>
> In general, curbs are not desirable along high-speed roadways.  If a vehicle is spinning or slipping sideways as it leaves the roadway, wheel contact with a curb could cause it to trip and overturn.  Under other impact conditions, a vehicle may become airborne,

5                                                    A-0616-15T1

which may result in loss of control by the motorist. The distance over which a vehicle may be airborne and height above (or below) normal bumper height attained after striking a curb may become critical if secondary crashes occur with traffic barriers or other roadside appurtenances.

[Id. § 3.4.1 at 3-14.]

NJDOT publishes its own roadway design manual (the "Design Manual"). The Design Manual in effect at the time of the resurfacing and milling project provided:

When resurfacing adjacent to curb, the curb should not be removed unless it is deteriorated or the curb face will be reduced to less than 3 inches. A curb face less than 3 inches is permissible, provided drainage calculations indicate the depth of flow in the gutter does not exceed the remaining curb reveal.

[Id. § 5.6.4, at 5-9 to 5-10.]

With regard to curb height, the Design Manual in effect at the time of the accident stated that for new installations of vertical curb, the curb height shall not exceed four inches for posted speeds greater than forty miles per hour. Id. at 5-9. For posted speeds less than or equal to forty miles per hour, the desirable curb height is four inches. Ibid.

The Design Manual also provides:

New installation of vertical curb shall not be constructed on freeways and Interstate highways; and are considered undesirable on other high-speed arterials. When accidently

6                                                    A-0616-15T1

struck at high speeds, it is difficult for the operator to retain control of the vehicle. In addition, most vertical curbs are not adequate to prevent a vehicle from leaving the roadway.

[Id. § 5.6.2 at 5-9.]

Following the completion of discovery, the State and NJDOT moved for summary judgment on several grounds. First, they asserted design immunity under N.J.S.A. 59:4-6(a). Second, they contended that the curb and concrete island did not constitute a "dangerous condition." N.J.S.A. 59:4-2(a). Third, they contended that their conduct was not "palpably unreasonable." N.J.S.A. 59:4-2.

After setting forth the operative facts in detail, the judge concluded that there were no genuine issues of material fact in dispute. The judge also described the legislative scheme and pertinent liability and immunity provisions of the Act. After reciting the arguments of counsel, the judge engaged in the following analysis in granting summary judgment to the State and NJDOT in her bench ruling:

> And giving the plaintiff the benefit of all the inferences the only evidence is that the height of the curb was effectively decreased as a result of the roadway resurfacing which amounts to a half an inch. And that this defect was contemplated by the designers of state roadways and that the Roadway Design Manual provides that a height of 3.5 inches under these circumstances is acceptable.

A-0616-15T1

And this court finds that there are no issues of fact in dispute that would preclude the granting of summary judgment. I'm persuaded by defendant's arguments. Summary judgment is, therefore, granted.

## II.

Our review of a ruling on summary judgment is de novo, applying the same legal standards as the trial court. Nicholas v. Mynster, 213 N.J. 463, 477-78 (2013). Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." R. 4:46-2(c). Because the trial court granted summary judgment to the State and NJDOT, we must consider the facts in a light most favorable to plaintiff. "The inquiry is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" Liberty Surplus Ins. v. Nowell Amoroso, P.A., 189 N.J. 436, 445-46 (2007) (quoting Brill v. Guardian Life Ins., 142 N.J. 520, 536 (1995)).

A-0616-15T1

A.

Public entity liability is restricted under the Act. <u>Polzo v. Cnty of Essex</u>, 209 <u>N.J.</u> 51, 55 (2012). Generally, a public entity is "immune from tort liability unless there is a specific statutory provision imposing liability." <u>Kahrar v. Borough of Wallington</u>, 171 <u>N.J.</u> 3, 10 (2012); <u>see</u> <u>Kain v. Gloucester City</u>, 436 <u>N.J. Super.</u> 466, 473 (App. Div. 2014); <u>N.J.S.A.</u> 59:1-2 and :2-1; <u>see</u> <u>Manna v. State</u>, 129 <u>N.J.</u> 341, 347 (1992) (recognizing that immunity is the dominant consideration of the Act). "The public entity bears the burden of proof for establishing immunity." <u>Kain</u>, <u>supra</u>, 436 <u>N.J. Super.</u> at 473 (citing <u>Bligen v. Jersey City Hous. Auth.</u>, 131 <u>N.J.</u> 124, 128 (1993)).

"Section 59:4-2 of the Act creates public liability for dangerous conditions on public property." <u>Manna</u>, <u>supra</u>, 129 <u>N.J.</u> at 347. The Act defines a "dangerous condition" as "a condition of property that creates a substantial risk of injury when such property is used with due care in a manner in which it is reasonably foreseeable that it will be used." <u>N.J.S.A.</u> 59:4-1(a); <u>see</u> <u>Garrison v. Twp. of Middletown</u>, 154 <u>N.J.</u> 282, 286-87 (1998); <u>see also</u> <u>Polzo,</u> <u>supra</u>, 209 <u>N.J.</u> at 72. A public entity is liable for a dangerous condition on its property

> if the plaintiff establishes that the property
> was in dangerous condition at the time of the
> injury, that the injury was proximately caused

by the dangerous condition, that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred, and that either:

> a. a negligent or wrongful act or omission of an employee of the public entity within the scope of his employment created the dangerous condition; or

> b. a public entity had actual or constructive notice of the dangerous condition under section 59:4-3 a sufficient time prior to the injury to have taken measures to protect against the dangerous condition.

Nothing in this section shall be construed to impose liability upon a public entity for a dangerous condition of its public property if the action the entity took to protect against the condition or the failure to take such action was not palpably unreasonable.

[N.J.S.A. 59:4-2.]

Thus, for liability to attach, a plaintiff must establish: 1) that a "dangerous condition" existed on the property at the time of the injury; 2) that the dangerous condition proximately caused the injury; 3) that the dangerous condition "created a reasonably foreseeable risk of the kind of injury which was incurred," 4) that either a) the dangerous condition was caused by a negligent employee or, alternatively, b) the public entity knew or should have known about the condition, and 5) that the entity's conduct was "palpably unreasonable." Vincitore v. Sports

& Expo. Auth., 169 N.J. 119, 125 (2001); see also Posey ex rel. v. Bordentown Sewerage Auth., 171 N.J. 172, 188 (2002).

Plaintiff contends that a reasonable jury could find that the three-and-a-half inch curb height constituted a dangerous condition. We disagree.

Plaintiff specifically claims that the failure to maintain the originally designed curb height was a catalyst in bringing about the collision. He relies upon the fact that NJDOT engineers approved the original height for the purpose of discouraging drivers from being tempted to mount the curbing the same manner as Wu maneuvered his vehicle on the evening of May 9, 2011. To be sure, the vertical curbs were designed to delineate the edge of the roadway and discourage motorists from leaving the roadway and crossing from the express lanes to the local lanes and vice versa. However, those facts are not controlling. Instead, the following critical facts are not in dispute.

The curb was constructed in accordance with the design specifications to provide a four-inch vertical face. It was not subsequently modified or removed. While the milling and repaving project slightly elevated surface of the roadway by one-half inch, the curbing itself was not altered. The physical condition of the curb was not defective. There is no evidence that it had deteriorated through weathering or spalling.

Plaintiff's contention that the vertical curb face should have been six to eight inches high is without merit. His reliance upon the recommendation in the AASHTO guidelines for six to eight inch curb faces is misplaced. The express lanes of Routes 1 and 9 are a high-speed freeway. As we have already noted, the AASHTO guidelines plainly state that curbs are contraindicated for freeways and other high-speed roadways, stating:

> Vertical curbs should not be used along freeways or other high-speed roadways because an out-of-control vehicle may overturn or become airborne as a result of an impact with such a curb. Since curbs are not adequate to prevent a vehicle from leaving the roadway, a suitable barrier should be provided where redirection of vehicles is needed.
>
> [Geometric Design of Highways and Streets, supra, at 320.]

The NJDOT Design Manual governs the design and construction of all roadway curbs in New Jersey. Design Manual, supra, § 5.6.2 at 5-9. It also states that new installation of vertical curbs shall not be constructed on freeways and are considered undesirable on other high-speed arterials. The Design Manual prohibits curb heights exceeding four inches. It expressly permits curb heights measuring between three to four inches. In fact, according to the Design Manual, vertical curbs measuring less than three inches are permissible when drainage is not an issue.

12

Both the original four-inch vertical face and the reduced three-and-one-half vertical face met applicable guidelines and standards. The slight one-half-inch reduction of the vertical curb face did not render it dangerous. Additionally, curbs are neither designed nor adequate to prevent a vehicle from leaving the roadway, particularly when the driver is intentionally driving over them in a sport utility vehicle.

We acknowledge that whether a property is in a "dangerous condition" is generally a question for the finder of fact. Vincitore, supra, 169 N.J. at 123; see also Daniel v. State, Dept. of Transp., 239 N.J. Super. 563, 573 (App. Div.), cert. denied, 122 N.J. 325 (1990). Nevertheless, summary judgment is appropriate if the evidence "'is so one-sided that defendant must prevail as a matter of law.'" Liberty Surplus Ins., supra, 189 N.J. at 446 (quoting Brill, supra, 142 N.J. at 536).

The term "dangerous condition" refers only to "the physical condition of the property itself and not to activities on the property." Levin v. Cnty. of Salem, 133 N.J. 35 (1993) (quoting Sharra v. Atlantic City, 199 N.J. Super. 535, 540 (App. Div. 1985). The physical condition of the property itself "must be defective for there to be recovery against a public entity." Lopez v. N.J. Transit, 295 N.J. Super. 196, 202 (App. Div. 1996). Here, the physical condition of the property was not defective or dangerous.

A-0616-15T1

The curb itself did not "create[] a substantial risk injury." N.J.S.A. 59:4-1(a). Instead, the singular apparent cause of the accident was the dangerous driving engaged in by Wu.

"[W]e have consistently rejected the contention that dangerous activities of other persons on public property, even if reasonably foreseeable, establish a dangerous condition of the property itself." Ross v. Moore, 221 N.J. Super. 1, 5 (App. Div. 1987) (citing Sharra, supra, 199 N.J. Super. at 540-41; Setrin v. Glassboro State Coll., 136 N.J. Super. 329, 333-35 (App. Div. 1975)). Plaintiff has not demonstrated that the curb posed an unreasonable risk of harm even in combination with the acts of third parties. See Speaks v. Jersey City Hous. Auth., 193 N.J. Super. 405, 412 (App. Div. 1984).

Plaintiff failed to produce any objective evidence demonstrating that the three-and-a-half inch vertical curb face constituted a dangerous condition. Given this record, no reasonable factfinder could conclude that the property was in a dangerous condition. Therefore, dismissal of plaintiff's claims against the State and NJDOT was appropriate

B.

In light of our ruling that three-and-one-half-inch curb height did not constitute a dangerous condition, we need not address plaintiff's claim that the conduct of the State and NJDOT

14

was "palpably unreasonable," since that issue only arises when there is an underlying dangerous condition. See N.J.S.A. 59:4-2 (public entity not liable for a dangerous condition if its conduct was not palpably unreasonable).

Nor need we address plaintiff's claim that defendants are liable for failing to provide adequate warning of a non-existent dangerous condition. See N.J.S.A. 59:4-4 (liability for failure to provide emergency warning signals to warn of a dangerous condition). In any event, the State and NJDOT are immune for failure to warn of the alleged hazardous nature of the curb. See Kolitch v. Lindedahl, 100 N.J. 485, 496 (1985) (State not liable for failure to warn of the hazardous nature of roadway curve) (citing Aebi v. Monmouth Cnty. Highway Dept., 148 N.J. Super. 430 (App. Div. 1977)); N.J.S.A. 59:4-5 (immunity for failure to provide ordinary traffic signals).

C.

The State and NJDOT also contend that they are entitled to the plan or design immunity provided by the Act for a claim based on the alleged dangerous condition. N.J.S.A. 59:4-6(a) provides:

> Neither the public entity nor a public employee is liable under this chapter for an injury caused by the plan or design of public property, either in its original construction or any improvement thereto, where such plan or design has been approved in advance of the construction or improvement by the Legislature

15

> or the governing body of a public entity or some other body or a public employee exercising discretionary authority to give such approval or where such plan or design is prepared in conformity with standards previously so approved.
>
> [N.J.S.A. 59:4-6(a).]

Plaintiff argues summary judgment based on plan or design immunity was inappropriate because the three-and-a-half inch curb did not strictly conform to the height approved in the original design, thereby precluding immunity under N.J.S.A. 59:4-6(a).

Because we hold that the vertical curb and concrete island did not constitute a dangerous condition within the meaning of the Act, we need not decide the discrete issue of whether the State and NJDOT are immune from liability for the plan or design of the original four-inch curb height, and the construction of the curb and roadway in conformity with that plan and design. We also need not address whether the one-half-inch reduction in the curb height that resulted from the repaving abrogated any applicable plan or design immunity in this matter.

### D.

Plaintiff also contends that the motion judge failed to set forth adequate findings of fact and conclusions of law in her ruling. Regardless of the alleged incompleteness of the motion judge's oral analysis, we are satisfied that the motion record and

A-0616-15T1

the governing case law clearly support the judge's entry of summary judgment.  See Isko v. Planning Bd. of Livingston, 51 N.J. 162, 175 (1968).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION