**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1293-22

RALPH JAMESON and ALISON
JAMESON,

     Plaintiffs-Appellants,

v.

DRD INTERNATIONAL, INC.,
DAVID E. SCHMIDT, RICHARD
W. KYLE, PREMIER TRAILER
LEASING, and COUNTY OF
MIDDLESEX,

     Defendants,

and

STATE OF NEW JERSEY,

     Defendant-Respondent.

_____

Submitted April 15, 2024 – Decided July 8, 2024

Before Judges Gilson, Bishop-Thompson, and Jacobs.

On appeal from the Superior Court of New Jersey, Law Division, Middlesex County, Docket No. L-6948-19.

Lenox, Socey, Formidoni, Giordano, Lang, Carrigg & Casey, LLC, attorneys for appellants (Casey P. Acker, on the brief).

Matthew J. Platkin, Attorney General, attorney for respondent (Sookie Bae-Park, Assistant Attorney General, of counsel; Thai L. Nguyen, Deputy Attorney General, on the brief).

PER CURIAM

Plaintiff Ralph Jameson was injured in an automobile accident at a traffic circle in Cranbury Township (the Cranbury Circle). Jameson's vehicle collided with a truck driven by Richard Kyle. Jameson and his wife, Alison Jameson, settled their claims against Kyle and his employer, DRD International, Inc. (DRD).

This appeal involves plaintiffs' claims against the State of New Jersey, which controlled the Cranbury Circle and which plaintiffs sued under the Tort Claims Act (the Act), N.J.S.A. 59:1-1 to 59:12-3. Plaintiffs appeal from an order granting summary judgment to the State and dismissing with prejudice all claims against the State. Because the record establishes that plaintiffs failed to show that the Cranbury Circle was a dangerous condition under the Act, and because the State established it was entitled to plan or design immunity under the Act, we affirm the summary judgment order in favor of the State.

I.

On October 15, 2018, Jameson was traveling in his car northbound on U.S. Route 130 in Cranbury Township. At the same time, Kyle was driving a truck on South Main Street, which intersects with the northbound lanes of U.S. Route 130 at the Cranbury Circle. There is a stop sign and white stop bar at the intersection of South Main Street where it enters the Cranbury Circle.

Kyle did not stop his truck at the stop sign; rather, he believed he had enough time to pass through the intersection and circle before any northbound vehicles on U.S. Route 130 came to the intersection. Kyle misjudged. Jameson's car struck Kyle's truck, resulting in severe injuries to Jameson. Kyle was cited for careless driving and failing to stop or yield.

In January 2019, plaintiffs served tort claim notices on the State and Middlesex County (the County). Thereafter, in October 2019, plaintiffs filed a two-count complaint against Kyle, DRD, David Schmidt, Premier Trailer Leasing, the County, and the State. In the first count of their complaint, plaintiffs alleged that DRD, Schmidt, Kyle, and Premier carelessly, negligently, or recklessly caused or contributed to the accident. In the second count, they alleged that the County and the State "owned, possessed, designed, redesigned, configured, proposed to be redesigned, maintained and/or controlled [the Cranbury Circle] in an unreasonably unsafe, reckless, and dangerous manner

and/or mode so as to create a dangerous condition causing and/or contributing to the aforementioned collision."

The parties then conducted discovery. During discovery, the parties took several depositions, answered interrogatories, and responded to document demands. Among the documents produced by the State were several "as-built" documents and diagrams of the Cranbury Circle. Those documents showed that the Cranbury Circle had been constructed in 1948 in accordance with a design plan that had been approved in 1947.

Plaintiffs produced two expert reports: one from an engineering expert and another from an accident reconstruction expert. At a deposition, the engineering expert opined that the Cranbury Circle was a dangerous condition because it had a crash history that exceeded crash history standards and that the Cranbury Circle's crash history should have raised "red flags." The accident reconstruction expert opined that there was a dangerous condition at the Cranbury Circle because slow-moving vehicles, such as tractor trailers, entering the Cranbury Circle could pose a danger to vehicles traveling at highway speeds. In that regard, plaintiffs' accident reconstruction expert stated:

> Mr. Kyle, knowing the significant gap in traffic that would be required to accelerate his stopped tractor-trailer across the northbound lanes of [fifty-five miles per hour] vehicular travel due to his experience at the

4

Cranbury Circle, gambled on accelerating west of the painted stop bar to give himself the best chance of accelerating through the intersection as quickly as possible.

. . . .

. . . The significant gap of time in traffic needed—ten (10) seconds for an unloaded tractor-trailer to just clear the northbound lanes—caused commercial drivers like Mr. Kyle to gamble and attempt to "beat" oncoming vehicular traffic whenever they perceived an acceptable gap in traffic. Thus, the dangerous condition of [the] Cranbury Circle which presented traffic traveling at highway speeds of [fifty-five miles per hour] to slow-moving and crossing tractor-trailers such as Mr. Kyle's was a cause of the subject collision on October 15, 2018.

[Emphasis in original.]

Plaintiffs also presented documents from a 2008 report made by a sergeant of the Cranbury Township Police Department to the New Jersey Department of Transportation (the DOT). In 2008, the sergeant sent a letter to the DOT's Bureau of Traffic Engineering and Investigations expressing concerns about the number of accidents at the Cranbury Circle. The documents produced by plaintiffs showed that a DOT employee met with the sergeant in 2008. Plaintiffs contended that despite that notice from Cranbury Township, nothing was done to redesign or change the traffic flow at the Cranbury Circle.

A-1293-22

In or around 2021, plaintiffs settled their claims against Kyle, DRD, Schmidt, and Premier. Those parties were then dismissed from the action by a stipulation filed in February 2021. Two months later, in April 2021, the County was stipulated out of the case. Thereafter, the only remaining defendant was the State.

In September 2022, the State moved for summary judgment. The State contended that plaintiffs had not and could not establish that the Cranbury Circle was a dangerous condition. The State also argued that under the Act, it was entitled to plan or design immunity and immunity for failure to provide traffic signals. Plaintiffs opposed the motion, relying on their experts' testimonies and contending that there were genuine issues of material fact concerning whether there was a dangerous condition and that the State failed to establish immunity under the Act.

On November 18, 2022, the trial court heard argument on the summary judgment motion. That same day, the court issued an order granting summary judgment to the State and dismissing with prejudice the claims against the State. The court explained the reasons for its ruling on the record.

The court first found that plaintiffs had "not provided any support" for the contention that the Cranbury Circle was a dangerous condition. In that regard,

the court determined that plaintiffs had "not advanced any argument pertaining to the physical condition of the property itself[,] and [that] lack of support [was] fatal to [plaintiffs'] claim." The court also held that under the Act, the State was entitled to immunity from suit for injuries resulting from the plan or design of public property. In making that alternative holding, the court found that the State had submitted unrebutted documents establishing that immunity.

Plaintiffs now appeal from the November 18, 2022 order granting summary judgment to the State and dismissing their claims with prejudice.

## II.

On appeal, plaintiffs make three main arguments. First, they argue that the Act does not require plaintiffs to show a "physical defect in the public property," and that the trial court erred in requiring them to do so. Second, they argue that the State is not entitled to plan or design immunity because it did not meet its burden of proof. Third, they argue that there were several genuine issues of material fact precluding summary judgment. In that regard, they assert that there were genuine issues of material fact with respect to (1) whether the Cranbury Circle constituted a dangerous condition of public property; (2) whether Kyle's conduct was the "sole cause of the accident;" and (3) whether the DOT should have conducted a crash analysis of the Cranbury Circle in 2008.

A-1293-22

We review a grant of summary judgment de novo, applying the same standard as the trial court.  Samolyk v. Berthe, 251 N.J. 73, 78 (2022).  That standard requires us to "determine whether 'the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law.'"  Branch v. Cream-O-Land Dairy, 244 N.J. 567, 582 (2021) (quoting R. 4:46-2(c)).  "Summary judgment should be granted . . . 'against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'"  Friedman v. Martinez, 242 N.J. 449, 472 (2020) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)).  We do not defer to the trial court's legal analysis or statutory interpretation.  RSI Bank v. Providence Mut. Fire Ins. Co., 234 N.J. 459, 472 (2018); Perez v. Zagami, LLC, 218 N.J. 202, 209 (2014).

A.    A Dangerous Condition Under the Act.

The Act waives the State's sovereign immunity subject to certain requirements and limitations.  See N.J.S.A. 59:1-2 (explaining that "public entities shall only be liable for their negligence within the limitations of this [Act] and in accordance with the fair and uniform principles established" in the

A-1293-22

Act). "Generally, immunity for public entities is the rule and liability is the exception." Fluehr v. City of Cape May, 159 N.J. 532, 539 (1999).

N.J.S.A. 59:4-2 delineates when public entities are responsible for injuries related to public property:

> A public entity is liable for injury caused by a condition of its property if the plaintiff establishes that the property was in dangerous condition at the time of the injury, that the injury was proximately caused by the dangerous condition, that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred, and that either:
>
> > a. a negligent or wrongful act or omission of an employee of the public entity within the scope of his [or her] employment created the dangerous condition; or
> >
> > b. a public entity had actual or constructive notice of the dangerous condition under [N.J.S.A. 59:4-3] a sufficient time prior to the injury to have taken measures to protect against the dangerous condition.
>
> Nothing in this section shall be construed to impose liability upon a public entity for a dangerous condition of its public property if the action the entity took to protect against the condition or the failure to take such action was not palpably unreasonable.

N.J.S.A. 59:4-1(a) defines a "dangerous condition" as "a condition of property that creates a substantial risk of injury when such property is used with due care in a manner in which it is reasonably foreseeable that it will be used."

Under that provision, "[a] dangerous condition . . . refers to the 'physical condition of the property itself and not to activities on the property.'" Wymbs ex rel. Wymbs v. Township of Wayne, 163 N.J. 523, 532 (2000) (quoting Levin v. County of Salem, 133 N.J. 35, 44 (1993)). To determine whether something is a dangerous condition, "it must be considered together with the anticipated use of the property." Buddy v. Knapp, 469 N.J. Super. 168, 197 (App. Div. 2021) (quoting Atalese v. Long Beach Township, 365 N.J. Super. 1, 5 (App. Div. 2003)).

The dangerous condition need not be an actual defect; it need only be a circumstance at the public property that makes it unsafe for its anticipated use. For example, in Ogborne v. Mercer Cemetery Corporation, 197 N.J. 448 (2009), the plaintiff was walking in a cemetery park and became trapped inside the park when a city employee "locked the gates several hours before the [p]ark was scheduled to close." Id. at 452. The plaintiff had to climb over a brick wall to exit the park, and she was injured when she dropped to the ground and fractured her tibia. Ibid. The Court reasoned that "if [the] plaintiff had not been in the [p]ark, the employee's conduct in locking the gates would not have created a dangerous condition of property," but because the plaintiff had been in the park, it was "reasonably debatable that the locking of the gates rendered the [p]ark a

dangerous condition." Id. at 461. The fact that the park could be locked was not the dangerous condition, and the plaintiff did not argue that the park had a physical defect; rather, it was that the park was locked during its operating hours that created the hazard to the plaintiff.

In this case, plaintiffs did not establish the existence of a dangerous condition at the Cranbury Circle. In that regard, plaintiffs have not identified anything specific in the Cranbury Circle that created a danger. Instead, their experts suggested that the Cranbury Circle may be poorly designed because there are a high number of accidents at the Cranbury Circle and multiple locations in the Cranbury Circle where accidents can occur. Critically, however, the experts did not point to a specific design defect in the Cranbury Circle. Instead, the engineering expert merely suggested that because there have been many accidents, the State should have done something to redesign the Cranbury Circle. While the engineering expert suggested several changes that could be made to the Cranbury Circle, including widening lanes or installing traffic signals rather than stop signs, and opined that these changes "may have" or "likely" would have prevented the accident, he emphasized his opinion that the high volume of traffic through the Cranbury Circle and the multiple points where

accidents could occur were what made the Cranbury Circle dangerous as a whole.

Indeed, plaintiffs' accident reconstruction expert effectively acknowledged that Kyle failed to stop at the stop sign and tried to excuse that failure by reasoning that a truck would have difficulty traveling across the Cranbury Circle in a timely manner if it had stopped at the sign. That opinion, however, does not form a factual basis from which a jury or fact-finder could find that there was a dangerous condition at the Cranbury Circle if Kyle had stopped his truck as required by the stop sign. The fact-finder or jury would be left to speculate that there would not have been a sufficient gap in oncoming traffic to allow a truck to safely pass through the intersection. In other words, plaintiffs' real argument is that the dangerous condition at the Cranbury Circle arises out of its design; however, they failed to show that the design was defective. They also failed to show that the unidentified dangerous condition in the Cranbury Circle caused the accident on October 15, 2018.

B.    Plan or Design Immunity Under the Act.

Under N.J.S.A. 59:4-6(a), public entities have "plan or design immunity" from liability for:

> [A]n injury caused by the plan or design of public property, either in its original construction or any

> improvement thereto, where such plan or design has been approved in advance of the construction or improvement by the Legislature or the governing body of a public entity or some other body or a public employee exercising discretionary authority to give such approval or where such plan or design is prepared in conformity with standards previously so approved.

Where this immunity attaches, the public entity is not subject to liability for an injury that arises from the design of the property. See Wymbs, 163 N.J. at 539. Moreover, plan or design immunity "is preserved even if the design presents a dangerous condition in light of a new context." Kain v. Gloucester City, 436 N.J. Super. 466, 477 (App. Div. 2014).

The public entity bears the burden of "both . . . production and persuasion" on the issue of plan or design immunity. Stewart v. N.J. Tpk. Auth./Garden State Parkway, 249 N.J. 642, 657 (2022). To establish plan or design immunity, the public entity must demonstrate that "an approved feature of the plan [for the public property] sufficiently addressed the condition that is causally related to the accident." Wymbs, 163 N.J. at 539 (quoting Manna v. State 129 N.J. 341, 353 (1992)). In that regard, the public entity "need not show that a feature of the plans (such as the installation of guardrails or paving an entire intersection) 'was specifically considered and rejected.'" Luczak v. Township of Evesham, 311 N.J. Super. 103, 109 (App. Div. 1998) (quoting Thompson v. Newark Hous.

13

Auth., 108 N.J. 525, 537 (1987)).  Instead, the public entity needs only to "offer evidence that it had considered the general condition about which a plaintiff complains in formulating the original plan or design."  Ibid.

Here, the State provided several "as-built" documents and diagrams of the Cranbury Circle's design plan.  Those drawings contemplated the "geometry" of the Cranbury Circle, which is apparently what plaintiffs contend caused or contributed to the accident.  Several of the documents included signatures of the individuals who submitted, recommended, or approved the plans.  Some of those documents predated the construction of the Cranbury Circle in 1948.  By producing those documents, the State met its burden of demonstrating that it considered the Cranbury Circle's shape in formulating its design.  While plaintiffs argue that the State did not produce "a plan and/or design applicable to the stop sign within the Cranbury Circle," the State needed only to offer evidence that it considered the flow of traffic around the Cranbury Circle generally, not the placement of one specific stop sign.  Therefore, the State was entitled to plan or design immunity.

C.    Plaintiffs' Contentions Concerning Disputed Material Facts.

Plaintiffs argue that there are genuine disputes of material fact concerning whether the Cranbury Circle constitutes a dangerous condition, whether Kyle's

14

conduct was the cause of the accident, and whether the State should have conducted a crash analysis in 2008. An analysis of these contentions demonstrates that none of those alleged disputes are genuine disputes of material fact.

First, plaintiffs assert that there were material disputed facts concerning whether the Cranbury Circle constitutes a dangerous condition. As already discussed, however, they do not identify a specific condition of Cranbury Circle beyond pointing to its general design and geometry. Because the State is entitled to immunity under the plan or design immunity of the Act, plaintiffs' general contentions do not constitute disputes of material fact. See Polzo v. County of Essex, 209 N.J. 51, 66 (2012) (explaining that a plaintiff claiming liability based on a dangerous condition of public property must prove that the dangerous condition exists); see also Petersen v. Township of Raritan, 418 N.J. Super. 125, 132 (App. Div. 2011) (explaining that "'[u]nsubstantiated inferences and feelings'" and "'[b]are conclusions in the pleadings . . . will not defeat a meritorious application for summary judgment'" (second alteration in original) (first quoting Oakley v. Wianecki, 345 N.J. Super. 194, 201 (App. Div. 2001), then quoting U.S. Pipe & Foundry Co. v. Am. Arb. Ass'n, 67 N.J. Super. 384, 399-400 (App. Div. 1961))).

Second, plaintiffs argue that the trial court improperly found that Kyle's "use of the subject intersection was the sole cause of the accident," but there were genuine issues of fact concerning causation. The trial court's comments concerning Kyle are not the material issue. The material question was whether plaintiffs presented any evidence that the State caused the accident. As we have already analyzed, plaintiffs did not demonstrate a dangerous condition at the Cranbury Circle, and the State established that it was entitled to plan or design immunity even if there had been a dangerous condition at the Cranbury Circle. Therefore, Kyle's actions were not the material issue concerning the State's potential for liability. Nevertheless, we note that while plaintiffs argue that Kyle did stop before entering the Cranbury Circle, the record establishes that there is no genuine dispute of fact because Kyle testified he did not stop immediately before the stop sign. In that regard, Kyle testified he stopped when the vehicle ahead of him stopped, then accelerated from that point straight through the stop sign (that is, he did not stop when he was "first in line" at the stop sign). So, there is no dispute that Kyle did not stop at the stop sign. See Petersen, 418 N.J. Super. at 132.

Finally, plaintiffs allege that there was a genuine issue of material fact as to whether a State employee should have conducted a crash analysis for the

16

Cranbury Circle in 2008. They argue that because of the State employee's omission, the State inadequately addressed the dangerous condition at the Cranbury Circle. This argument is tautological. Plaintiffs assume that there was a dangerous condition that needed to be addressed without identifying what that condition was. Just as importantly, plaintiffs have not established any facts showing that the State employee's failure to conduct a crash analysis in 2008 was palpably unreasonable. See Polzo, 209 N.J. at 66 (explaining that for liability to attach to a public entity under the Act, the plaintiff must show that the "public entity's failure to protect against the dangerous condition can be deemed 'palpably unreasonable'" (quoting N.J.S.A. 59:4-2)).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office

CLERK OF THE APPELLATE DIVISION

A-1293-22