**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1248-17T3

MIRIAM L. CHICAS, a/k/a
MIRIAM CHICAS,

       Plaintiff-Respondent,

v.

TOWN OF KEARNY and
DEREK P. HEMPHILL,

       Defendants-Appellants,

and

JOSE A. MARTINEZ, a/k/a
JOSE CHICAS,

       Defendant-Respondent.

_____

JOSE A. MARTINEZ,

       Plaintiff-Respondent,

v.

TOWN OF KEARNY and
DEREK P. HEMPHILL,

       Defendants-Appellants.

_____

Argued November 14, 2018 – Decided January 10, 2019

Before Judges Yannotti, Rothstadt, and Gilson.

On appeal from Superior Court of New Jersey, Law Division, Hudson County, Docket Nos. L-2516-15 and L-4785-15.

Monique D. Moreira argued the cause for appellants (Moreira & Moreira, PC, attorneys; Monique D. Moreira, on the briefs).

Adam B. Lederman argued the cause for respondent Miriam L. Chicas (Davis, Saperstein & Salomon, PC, attorneys; Adam B. Lederman and David A. Drescher, on the brief).

Antonio D. Arthurs argued the cause for respondent Jose A. Martinez (Law Offices of Jeffrey S. Hasson, PC, attorneys; Antonio D. Arthurs, on the brief).

Law Office of Patricia A. Palma, attorneys for respondent Jose A. Martinez (Catherine Masterson, on the brief).

PER CURIAM

On a snowy night, a Kearny police officer was on patrol in a police vehicle. As he came down a street with an incline, he applied the brakes, but his car slid through a stop sign and a car driven by plaintiff Jose Martinez collided with the police vehicle. Plaintiff Miriam Chicas was a passenger in the car driven by Martinez. Both Martinez and Chicas were injured and sued the police officer and the Town of Kearny, which employed the officer. A jury

found the officer negligent and solely responsible for the accident. Defendants appeal from a January 6, 2017 order denying their motion for summary judgment and a July 20, 2017 judgment memorializing the jury verdict. Having reviewed the arguments in light of the record and applicable law, we affirm.

I

We take the facts from the record, including the evidence presented at trial. On January 2, 2014, weather reports predicted a winter snowstorm. Anticipating that the snow might be "heavy" and that road conditions might become "hazardous," the Governor declared a state of emergency and authorized various state officials to take certain actions if necessary. The declaration did not close roads in the state and did not restrict people from driving.

Snow began falling on the evening of January 2, 2014, and continued into January 3, 2014. In the early morning hours of January 3, 2014, Kearny Police Officer Derek Hemphill was patrolling the streets of Kearny to determine which roads needed to be plowed. Officer Hemphill was traveling in a Dodge Durango police vehicle. At approximately 1:22 a.m., Officer Hemphill was traveling on Laurel Avenue approaching a stop sign at a "T" intersection with Schuyler Avenue. As Officer Hemphill applied his brakes, his vehicle skidded and slid past the stop sign and into Schuyler Avenue. At approximately the same time, plaintiff Martinez was driving a vehicle southbound on Schuyler Avenue,

approaching the intersection with Laurel Avenue. Just before Martinez's vehicle reached the intersection, Officer Hemphill's vehicle slid into Schuyler Avenue. Martinez hit his brakes, but the front of his vehicle collided with the front driver's side of Hemphill's vehicle.

Martinez had been driving his sister's car, a Mazda SUV. His sister, plaintiff Chicas, was a passenger in the vehicle, sitting in the front seat. A friend was seated in the rear passenger's side of the vehicle. Martinez and Chicas were wearing seatbelts at the time of the collision.

Martinez and Chicas were both injured as a result of the collision. Martinez herniated discs in his spine and neck and those injuries required medical treatment. He also tore cartilage in his left wrist, which required surgery. Chicas injured her neck, lower back, and knee. She required medical treatment, which included surgery on her neck and knee.

In 2015, Chicas and Martinez separately sued Kearny and Officer Hemphill. In her suit, Chicas also asserted claims against Martinez. Those suits were consolidated and the parties engaged in discovery.

During discovery, plaintiffs produced a report on liability prepared by Robert Klingen, an expert in accident reconstruction. Klingen opined that Officer Hemphill had been driving at twenty-nine miles per hour as he approached the stop sign on January 3, 2014. Having reviewed weather reports

and various parties' testimony, Klingen pointed out that there was snow on the ground and the officer was traveling above the twenty-five-miles-per-hour speed limit for Laurel Avenue. Klingen further opined that the officer's rate of speed was not appropriate given the snow on the road and the downward incline of Laurel Avenue. Thus, Klingen opined that Hemphill solely caused the collision when his vehicle failed to stop at the stop sign and failed to yield the right-of-way to Martinez's vehicle.

Following the completion of discovery, defendants moved for summary judgment contending that plaintiffs' claims were barred by the New Jersey Tort Claims Act (TCA), N.J.S.A. 59:1-1 to 12-3. Defendants also argued that Klingen's opinion was a net opinion and he should be precluded from testifying.

After hearing oral argument, the trial court denied the summary judgment motion in an order entered on January 6, 2017. The court held that the TCA did not apply because Hemphill had been engaged in ministerial actions and none of the exemptions under the TCA barred plaintiffs' claims. The trial court also held that Klingen's expert opinion was not a net opinion because those opinions were based on facts and analysis, including the testimony of the parties at depositions, an accident scene inspection, and related analysis.

The parties thereafter agreed to bifurcate liability and damages and, in July 2017, the case proceeded to a trial on liability. At the beginning of the

5

liability trial, the court granted an in limine motion filed by plaintiffs and precluded defendants from referencing the Governor's declaration of a state of emergency. The court ruled that any reference to the state of emergency would be substantially more prejudicial than probative because the declaration did not prohibit Martinez from driving on January 3, 2014.

During the liability trial, the jury heard testimony from a number of witnesses, including plaintiffs, Klingen, Officer Hemphill, and a defense liability expert, Mark Marpet. After considering all of the evidence presented, the jury returned a verdict for plaintiffs finding Officer Hemphill negligent and solely responsible for the accident. On July 20, 2017, the trial court memorialized that verdict in a judgment. The judgment also dismissed with prejudice Chicas' claims against Martinez.

Thereafter, the parties agreed to resolve damages at a binding arbitration. The arbitrator issued his decision on October 27, 2017, and awarded Chicas $750,000 and Martinez $625,000.

Defendants now appeal from the order denying them summary judgment and the liability judgment. Defendants do not challenge the arbitration award on damages.

A-1248-17T3

II

On appeal, defendants make a number of arguments challenging both the denial of their motion for summary judgment and the jury verdict. Those arguments can be organized into five issues: (1) whether defendants were entitled to judgment as a matter of law based on the TCA; (2) whether plaintiffs' expert report should have been barred as a net opinion; (3) whether the trial court erred in refusing to allow the jury to consider immunities under the TCA; (4) whether the trial court erred in excluding any reference to the state of emergency; and (5) whether the trial court erred in denying defendants' request for three jury charges. We are not persuaded by any of defendants' arguments and we discern no error warranting vacating the jury verdict.

A.    The TCA

Defendants argue that immunities under the TCA precluded their liability as a matter of law. Since these are legal issues, our review is de novo. Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 224 N.J. 189, 199 (2016) (first citing Mem'l Props., LLC v. Zurich Am. Ins. Co., 210 N.J. 512, 524 (2012); then citing Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)).

"The TCA provides general immunity for all governmental bodies except in circumstances where the Legislature has specifically provided for liability."

A-1248-17T3

Caicedo v. Caicedo, 439 N.J. Super. 615, 623 (App. Div. 2015) (quoting Kain v. Gloucester City, 436 N.J. Super. 466, 473 (App. Div. 2014)). As such, "the TCA's dominant theme is immunity, with liability as the exception." Ibid. (first citing D.D. v. Univ. of Med. & Dentistry of N.J., 213 N.J. 130, 134 (2013); then citing Rochinsky v. Dep't of Transp., 110 N.J. 399, 408 (1988)). "Even if liability exists, '[c]ourts must "recognize[] the precedence of specific immunity provisions," and ensure "the liability provisions of the Act will not take precedence over specifically granted immunities."'" Patrick ex rel. Lint v. City of Elizabeth, 449 N.J. Super. 565, 572 (App. Div. 2017) (alterations in original) (quoting Parsons v. Mullica Twp. Bd. of Educ., 440 N.J. Super. 79, 95 (App. Div. 2015)). Accordingly, to determine whether a public entity is immune, "courts should employ an analysis that first asks 'whether an immunity applies and if not, should liability attach.'" Bligen v. Jersey City Hous. Auth., 131 N.J. 124, 128 (1993) (quoting cmt. on N.J.S.A. 59:2-1(a)). The burden of proof rests on the public entity to establish immunity. Caicedo, 439 N.J. Super. at 623 (quoting Kain, 436 N.J. Super. at 473). "Where a public entity is immune from liability for injury, so too is the public employee." Id. at 624 (citing N.J.S.A. 59:3-1(c)).

Defendants argue that three provisions of the TCA provide them with immunity. In that regard, they contend that they are protected from liability

under (1) the weather condition immunity, N.J.S.A. 59:4-7; (2) the good-faith immunity, N.J.S.A. 59:3-3; and (3) the palpably unreasonable standard, N.J.S.A. 59:3-1(c). We disagree.

1.    The Weather Condition Immunity

N.J.S.A. 59:4-7 provides that "[n]either a public entity nor a public employee is liable for an injury caused solely by the effect on the use of streets and highways of weather conditions." The key word in that immunity is "solely." If weather conditions combine with other causes then the weather condition immunity will not act as a bar. Dickerson ex rel. Duberson v. Twp. of Hamilton, 400 N.J. Super. 189, 198-99 (App. Div. 2008) (quoting McGowan v. Borough of Eatontown, 151 N.J. Super. 440, 447 (App. Div. 1977)); see also Meta v. Twp. of Cherry Hill, 152 N.J. Super. 228, 232 (App. Div. 1977). Therefore, the weather condition immunity will not apply to snow- and ice-related accidents where there is evidence that plaintiffs' injuries were caused by factors in addition to the weather itself.

Here, there was evidence that the collision was not solely caused by the snowy conditions of the roads. Officer Hemphill testified that as he approached the stop sign at the intersection of Laurel Avenue and Schuyler Avenue, he applied his brakes, but his car skidded through the stop sign and proceeded onto Schuyler Avenue. While the officer testified that the road had snow on it, he

9

also testified that he began to apply his brakes approximately 160 feet before the stop sign. Plaintiffs submitted an expert report and the expert testified that the officer's driving speed and inability to control his vehicle had caused the accident. Analyzing the police report, the parties' testimony at depositions, and a site inspection, the expert conducted a slide-to-stop calculation. After accounting for the downhill grade of Laurel Avenue and the snowy conditions of the street, the expert opined that Officer Hemphill was driving at twenty-nine miles per hour when the speed limit on that road was twenty-five miles per hour.

Based on that evidence, a reasonable jury could conclude that the officer had been driving negligently in failing to stop even given the weather conditions. Accordingly, there was sufficient evidence presented that weather conditions were not the sole cause of the accident. Therefore, defendants were not entitled to judgment as a matter of law based on the weather condition immunity.

2.     The Good-Faith Immunity

N.J.S.A. 59:3-3 provides that "[a] public employee is not liable if he [or she] acts in good faith in the execution or enforcement of any law." "The TCA does not, however, 'exonerate a public employee for negligence arising out of his [or her] acts or omissions in carrying out his [or her] ministerial functions.'" Caicedo, 439 N.J. Super. at 624 (alterations in original) (quoting N.J.S.A. 59:3-2). In Caicedo, we declined to extend the good-faith immunity provision to

10                                                                                                          A-1248-17T3

police officers acting in situations that do not involve an emergency, "such as patrolling the streets or transporting prisoners." Ibid. Accordingly, we held that a police officer "was not acting in the 'execution or enforcement of any law' so as to afford him immunity under N.J.S.A. 59:3-3 while transporting [a] prisoner to the police precinct when [a] collision occurred." Id. at 626.

In that regard, we noted that "[r]ead literally, N.J.S.A. 59:3-3 could be interpreted to immunize all police activities, since 'virtually every police function or duty is pursuant to some legal authorization in the broadest sense.'" Ibid. (quoting Aikens v. Morris, 583 N.E.2d. 487, 493 (Ill. 1991)). Consequently, we held that the Legislature did not intend for N.J.S.A. 59:3-3 "to be construed so broadly." Id. at 627. Instead, "the determination of whether a police officer is engaged 'in the execution or enforcement of any law' so as to entitle that officer to good-faith immunity under the statute must be made on a case-by-case basis." Ibid.

Here, Officer Hemphill testified that he was patrolling the streets of Kearny to determine which streets needed to be plowed. He was not responding to a report of a crime, an accident, or some other situation requiring his immediate attention. Defendants argue that Officer Hemphill was patrolling the streets under a state of emergency situation and, therefore, was involved in enforcement of the law. As already pointed out, however, the state of emergency

11

did not close the streets to public use. Instead, the state of emergency authorized certain state officials to take actions if appropriate. There was no evidence that Officer Hemphill was specifically directed by any state official to conduct the patrol that he was engaged in on January 3, 2014. Thus, there was no evidence that Officer Hemphill was executing or enforcing any law that would implicate the good-faith immunity under the TCA. Accordingly, defendants were not entitled to immunity under N.J.S.A. 59:3-3.

3.    The Palpably Unreasonable Standard

Defendants also argue that they are entitled to immunity under subsection (c) of N.J.S.A. 59:3-1. That provision states, "[a] public employee is not liable for an injury where a public entity is immune from liability for that injury." Defendants then argue that the Town of Kearny could not be held liable under a normal negligence standard. Instead, defendants contend that the Town of Kearny could only be liable under a "palpably unreasonable" standard and, therefore, plaintiffs needed to show that Officer Hemphill's actions were palpably unreasonable for liability to attach. The TCA does not support this argument.

A public employee is liable for an injury caused by his or her acts or omissions to the same extent as a private person unless there is a specific immunity granted by the TCA. N.J.S.A. 59:3-1(a). Likewise, "[a] public entity

is liable for injury proximately caused by an act or omission of a public employee within the scope of his [or her] employment in the same manner and to the same extent as a private individual under like circumstances." N.J.S.A. 59:2-2(a); see also Tice v. Cramer, 133 N.J. 347, 355 (1993) ("The primary liability imposed on public entities is that of respondeat superior: when the public employee is liable for acts within the scope of that employee's employment, so too is the entity[.]")

Defendants cite to Ogborne v. Mercer Cemetery Corp., 197 N.J. 448 (2009) in support of the contention that a heightened "palpably unreasonable" negligence standard should apply. In that case, the court used the "palpably unreasonable" standard based on N.J.S.A. 59:4-2, which deals with public entities' liability for dangerous conditions on public property. See Ogborne, 197 N.J. at 456-57. That statute is intended to comport with the principles of liability used by courts for local public entities in their capacity as landowners. Id. at 459-60 (citing Margolis & Novack, Claims Against Public Entities, 1972 Task Force Comment on N.J.S.A. 59:4-2 (2016)). While N.J.S.A. 59:4-2 has been applied broadly, it nevertheless is limited to situations where a dangerous condition of public property itself is at issue. Ibid.

Here, plaintiffs are not complaining about the condition of the roads in Kearny. Instead, plaintiffs sought to hold Kearny and Officer Hemphill

A-1248-17T3

responsible for the negligence of the officer while he was patrolling in snowy conditions. Accordingly, the heightened "palpably unreasonable" standard set forth in N.J.S.A. 59:4-2 is inapplicable. Rather, in accord with N.J.S.A. 59:2-2(a), defendants were subject to liability under the normal negligence standard.

B.    Plaintiffs' Expert Report

Defendants next argue that they were entitled to summary judgment because plaintiffs' expert opinion was a net opinion and, without that expert opinion, plaintiffs could not prove liability. The trial court rejected defendants' arguments and found the expert opinions were based on facts and data, including testimony by the parties, an inspection of the accident scene, a review of weather reports, and related analysis. The trial court concluded that the expert opinions possessed the "why and wherefores" and, thus, were not inadmissible as net opinions.

We review a trial court's decision to admit expert testimony under an abuse of discretion standard. Alloco v. Ocean Beach & Bay Club, 456 N.J. Super. 124, 142 (App. Div. 2018) (quoting Townsend v. Pierre, 221 N.J. 36, 53 (2015)). The net opinion doctrine is a "corollary of [N.J.R.E. 703] . . . which forbids the admission into evidence of an expert's conclusions that are not supported by factual evidence or other data." Quail v. Shop-Rite Supermarkets,

Inc., 455 N.J. Super. 118, 132 (App. Div. 2018) (alterations in original) (quoting Pierre, 221 N.J. at 53-54). "[T]he net opinion rule 'requires an expert to give the why and wherefore of his or her opinion, rather than a mere conclusion.'" Alloco, 456 N.J. Super. at 142 (quoting State v. Townsend, 186 N.J. 473, 494 (2006)). Experts must "be able to identify the factual bases for their conclusions, explain their methodology, and demonstrate that both the factual bases and the methodology are reliable." Pierre, 221 N.J. at 55 (quoting Landrigan v. Celotex Corp., 127 N.J. 404, 417 (1992)).

Here, we discern no abuse of discretion in the trial court's decision to admit the expert opinion by Klingen. Klingen's opinions were based on evidence in the record. In that regard, he reviewed a police accident and investigation report, interrogatory responses, and deposition testimony by the parties, including Officer Hemphill, Martinez, and Chicas. Klingen also conducted a physical inspection of the location where the collision occurred and performed accident reconstruction analysis, including a slide-to-stop calculation.

Klingen's report and his testimony provided analysis and explained how he reached his opinions. Moreover, the analysis and resulting opinions were not based on a "personal standard." See Alloco, 456 N.J. Super. at 143 ("A standard which is personal to the expert is equivalent to a net opinion." (quoting Pomerantz Paper Corp. v. New Cmty. Corp., 207 N.J. 344, 373 (2011))).

Instead, the opinions were based on standards used by accident reconstruction experts. In that regard, Klingen relied on sources such as traffic accident reconstruction manuals, a traffic accident investigation manual, and a manual on equations for the traffic crash reconstructionist. In short, Klingen's expert opinions were not net opinions.

C.      Trial Court's Decision Not To Ask The Jury To Consider Immunities Under The TCA

Defendants argue that, at trial, the court erred by instructing the jury to determine if defendants were negligent. Defendants contend that the jury should have been instructed on the verdict sheet to determine if defendants were protected by the three immunities defendants claim precluded their liability under the TCA. In other words, having been denied summary judgment on those TCA immunities, defendants asked the trial court to allow the jury to consider those immunities.

Here, there were no material fact disputes concerning the application of the three TCA immunities. Instead, as defendants acknowledged in moving for summary judgment, determining whether the three immunities under the TCA applied to the facts of this case involved questions of law for the court to decide. As we have already determined that the immunities did not apply as a matter of law, the trial court correctly refused to submit those legal issues to the jury.

D.    The State of Emergency

Next, defendants assert that the trial court erred when it granted plaintiffs' in limine motion to preclude reference to the Governor's state-of-emergency declaration.  Defendants first contend that the in limine motion was filed late and should not have been considered.  Second, they argue that, substantively, the court erred by precluding references to the state of emergency because such evidence was not substantially more prejudicial than probative.  We disagree with both of these arguments.

Defendants did not challenge the timeliness of the in limine motion in the trial court.  Accordingly, we decline to consider it for the first time on appeal.  "[A]ppellate courts will decline to consider questions or issues not properly presented to the trial court when an opportunity for such a presentation is available."  State v. Witt, 223 N.J. 409, 419 (2015) (quoting State v. Robinson, 200 N.J. 1, 20 (2009)); Nieder v. Royal Idem. Ins. Co., 62 N.J. 229, 234 (1973).  Nevertheless, we note that the record reflects that more than seven days before trial, plaintiffs served their pre-trial information exchange, which stated that they intended to bring an in limine motion to bar any reference to a "statewide vehicular ban on the day of the accident[.]"  Three days before trial, plaintiffs amended their pre-trial information exchange to further clarify that their in limine motion would seek to bar "any reference to a 'State of Emergency' and/or

statewide vehicular ban on the day of the accident[.]"  Accordingly, defendants were on notice prior to trial of the in limine motion and we discern no reversible error concerning the timeliness of the motion.  See R. 4:25-7(b) (governing the exchange of information regarding in limine or trial motions).

Turning to the substance, the trial court determined that the reference to the state of emergency would be substantially more prejudicial than probative under Rule 403.  Specifically, the trial court found that there was no evidence that motor vehicles were prohibited from being on the road on the day of the accident.  Accordingly, the trial court reasoned that the jury could incorrectly assume that a state of emergency meant plaintiffs' vehicle should not have been on the road and, thus, references to the state of emergency could be confusing.

We review the trial court's decisions to admit or exclude evidence under an abuse of discretion standard.  Estate of Hanges v. Metro. Prop. & Cas. Ins. Co., 202 N.J. 369, 383-84 (2010) (citing Green v. N.J. Mfrs. Ins. Co., 160 N.J. 480, 492 (1999)).  Accordingly, absent a showing that the court abused its discretion, we will not reverse a decision concerning the admission or exclusion of evidence unless we conclude that it was so wide of the mark as to bring about a manifest injustice.  E & H Steel Corp. v. PSEG Fossil, LLC, 455 N.J. Super. 12, 24-25 (App. Div. 2018) (citing Griffin v. City of E. Orange, 225 N.J. 400, 413 (2016)).

Under Rule 403, the trial court can exclude relevant evidence "if its probative value is substantially outweighed by the risk of (a) undue prejudice, confusion of issues, or misleading the jury or (b) undue delay, waste of time, or needless presentation of cumulative evidence." N.J.R.E. 403. "The burden lies with the party seeking exclusion of the evidence to show that the probative value is substantially outweighed by one or more of the factors listed in Rule 403." McLean v. Liberty Health Sys., 430 N.J. Super. 156, 167 (App. Div. 2013) (citing State v. Morton, 155 N.J. 383, 453 (1998)).

Here, we discern no abuse of discretion in the trial court's decision to exclude evidence of the state of emergency. As already noted, the executive order declaring a state of emergency did not ban vehicles from traveling on the roadways. Instead, it authorized various state officials to take actions if they deemed it appropriate depending on how the snowstorm developed. The trial court did not abuse its discretion when it found reference to the state of emergency would confuse the issues the jury needed to determine and that confusion was substantially more prejudicial than probative. Indeed, defendants have not articulated how the state of emergency was probative of any issue the jury needed to determine.

E.    Defendants' Requested Jury Charges

Finally, defendants argue that the trial court erred by refusing to give the jury three instructions that defendants had requested.  Specifically, defendants wanted the jury to be read the charges concerning (1) an act of God, Model Jury Charge 5.10(E); (2) proximate causation, where there is a claim of concurrent cause of harm, Model Jury Charge 6.13; and (3) the duty of a passenger in an automobile, Model Jury Charge 7.12.

"A jury is entitled to an explanation of the applicable legal principles and how they are to be applied in light of the parties' contentions and the evidence produced in the case."  Viscik v. Fowler Equip. Co., 173 N.J. 1, 18 (2002) (quoting Rendine v. Pantzer, 276 N.J. Super. 398, 431 (App. Div. 1994)).  Accordingly, a "jury charge must correctly state the applicable law, outline the jury's function and be clear in how the jury should apply the legal principles charged to the facts of the case at hand."  Estate of Kotsovska ex rel. Kotsovska v. Liebman, 221 N.J. 568, 591 (2015) (quoting Viscik, 173 N.J. at 18).  Courts accomplish this goal by tailoring the jury charge to the specific facts of a case.  Id. at 591-92 (citing Reynolds v. Gonzalez, 172 N.J. 266, 289 (2002)).

In reviewing the adequacy of a jury charge, we consider the charge as a whole to determine if any error occurred.  See id. at 592; see also State v. Figueroa, 190 N.J. 219, 246 (2007) (citing State v. Wilbely, 63 N.J. 420, 422

20

(1973)).  When a party objects to a jury charge at trial, we will reverse on the basis of a challenged error "unless the error is harmless."  Estate of Kotsovska, 221 N.J. at 592 (quoting Toto v. Ensuar, 196 N.J. 134, 144 (2008)).  "An error is harmful only where that error is 'clearly capable of producing an unjust result.'"  Ibid. (quoting R. 2:10-2).  Applying this standard, we discern no reversible error in the decision of the trial court to not give these three jury charges.

An act of God must be an unexpected event.  In that regard, the model jury charge explains that "[a]n act of God is an unusual, extraordinary and unexpected manifestation of the forces of nature, or a misfortune or accident arising from inevitable necessity which cannot be prevented by reasonable human foresight and care."  Model Jury Charges (Civil), 5.10(E), "Act of God" (approved before 1984).  The trial court acknowledged that the snow on the day of the accident was predicted and Officer Hemphill was aware that he was driving on snow-covered roads.  Accordingly, the court reasoned that the snowfall on the day of the accident was not a phenomenon of weather so unpredictable or extensive to constitute an act of God.  We discern no reversible error in that decision.

Addressing proximate cause, the trial court determined to give the proximate cause charge under Model Jury Charge 6.12, rather than the charge

21

under Model Jury Charge 6.13. Model Jury Charge 6.12 addresses proximate cause where there is a claim that concurrent causes of harm were present. Model Jury Charges (Civil), 6.12, "Proximate Cause — Where There Is Claim that Concurrent Causes of Harm Were Present" (approved May 1998). In contrast, Model Jury Charge 6.13 addresses situations involving proximate cause where there were concurring causes and there are claims that the specific harm was not foreseeable. Model Jury Charges (Civil), 6.13, "Proximate Cause — Where There Is Claim that Concurrent Causes of Harm Are Present and Claim that Specific Harm Was Not Foreseeable" (approved May 1998). We discern no reversible error in the court's decision to charge proximate cause under Model Jury Charge 6.12, as compared to Model Jury Charge 6.13.

Model Jury Charge 7.12 addresses a situation where a passenger "knows, or in the exercise of reasonable care should know, that the driver is incapable of operating the automobile or is operating the automobile in a negligent manner[.]" Model Jury Charges (Civil), 7.12, "Duty of Passenger in Automobile" (approved May 1991). In such circumstances, the jury can then be charged that "when it should become apparent to a reasonably careful person that the vehicle is being driven negligently, the reasonable passenger must protest or otherwise persuade the driver to drive carefully." Ibid.

22

Here, defendants' theory was that Chicas was negligent for getting into the car with Martinez a second time. In that regard, the evidence at trial showed that Martinez and Chicas had first stopped at Chicas' home, and then continued driving to Martinez's home, which was located nearby. Chicas elected to go with Martinez on the second trip because Martinez was using her vehicle, and she planned to return home with it after dropping him off.

Defendants cite to no law for the proposition that a reasonably careful person who is riding in a motor vehicle as a passenger when it is snowing would know or should know that the driver is operating the vehicle negligently. Accordingly, we discern no reversible error in the trial court's decision not to give an instruction concerning the duty of a passenger in an automobile.

In summary, having reviewed the record, including the record at trial, defendants were accorded a fair trial. They were charged with negligence, but they were afforded a full and fair opportunity to present their defenses. Thus, there is no basis to reverse the jury verdict.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1248-17T3