**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5570-17T4

JOSEPH KOCH,

      Plaintiff-Appellant,

v.

STATE OF NEW JERSEY, KEAN
UNIVERSITY, SIGMA THETA
CHI FRATERNITY, SIGMA THETA
CHI FRATERNITY, INC., ROCCO
HERNANDEZ, and CHRISTOPHER
LASSONI,

      Defendants-Respondents,

and

DAWOOD FARAHI, as President
of KEAN UNIVERSITY, JOHN
KULISH, BARBARA KULISH,
MICHAEL ROSCHE, ERIC PUGA,
MARIA ROSCHE, ALEX BOZGO,
ANTHULLA CUADRA, and
SHAQUAN LANDRUM,

      Defendants.

_____

Submitted December 9, 2019 – Decided January 16, 2020

Before Judges Sumners, Geiger and Natali.

On appeal from the Superior Court of New Jersey, Law Division, Union County, Docket No. L-3022-15.

Maria D. Noto, attorney for appellant.

Law Offices of William E. Staehle, attorneys for respondent Christopher Lassoni (Kevin D. London, on the brief).

Litvak & Trifiolis, PC, attorneys for respondent Rocco Hernandez (Steven I. Litvak, of counsel; Thomas William Griffin, on the brief).

Gurbir S. Grewal, Attorney General, attorney for respondents State of New Jersey and Kean University (Melissa H. Raksa, Assistant Attorney General, of counsel; Michael R. Sarno, Deputy Attorney General, on the brief).

Musto and Alevras, attorneys for respondents Sigma Theta Chi Fraternity and Sigma Theta Chi Fraternity, Inc., join in the briefs of respondents State of New Jersey, Kean University, Rocco Hernandez and Christopher Lassoni.

PER CURIAM

Plaintiff Joseph Koch, while a student at defendant Kean University (Kean), sustained serious injuries when he was shot by defendant Shaquan Landrum. Koch was attending a private party at an off-campus residence hosted by defendants Michael Rosche, Rocco Hernandez, Christopher Lassoni, Eric Puga, and Alex Bozgo, members of defendant Sigma Theta Chi fraternity. After

the parties engaged in extensive discovery and motion practice, on November 3, 2017, the Law Division issued orders granting summary judgment to defendants the State of New Jersey, Kean, Hernandez, Lassoni, Sigma Theta Chi Fraternity, and Sigma Theta Chi Fraternity, Inc., and denied summary judgment as to defendant Michael Rosche.[1]

After a thorough consideration of the record and the parties' arguments in light of the applicable legal principles, we affirm the court's November 3, 2017 order dismissing Kean, the State, Hernandez, and Lassoni. We vacate, however, the portion of the November 3, 2017 order that granted summary judgment to Sigma Theta Chi Fraternity and Sigma Theta Chi Fraternity, Inc., and remand for further proceedings.

## I.

In our review of the record, we viewed the facts and all reasonable inferences therefrom in the light most favorable to plaintiff, the party against whom summary judgment was entered. Brill v. Guardian Life Ins. Co. of Am.,

---

[1] In separate orders, the court also granted summary judgment to defendants Dawad Farahi, as President of Kean, Bozgo, Anthulla Cuadra, and Maria Rosche. The court also issued a default judgment as to liability against Landrum. We limit our discussion to plaintiff's claims against Hernandez, Lassoni, Kean, the State of New Jersey, Sigma Theta Chi Fraternity, and Sigma Theta Chi Fraternity, Inc., because plaintiff challenges only the dismissal of his claims against those parties.

A-5570-17T4

142 N.J. 520, 540 (1995); R. 4:46-2(c). Applying that standard, the record before the trial court established the following facts.

At approximately 10:30 p.m. on Friday, April 17, 2015, plaintiff and five of his friends arrived at a large party at a home at 215 Conant Street in Hillside where alcohol was being served. According to Zach Lanaras, who was a fraternity member, the party "was basically being run by Sigma Theta Chi." Although Lanaras was collecting five dollars at the front door of the house for admission, he was not checking the identification of any guest. Once the entry fee was paid, guests were permitted to drink the alcohol available inside the home.

After midnight on April 18, 2015, Paul Rohm, who lived on the third floor, got into an altercation with Landrum inside the house. When Lanaras heard "commotion inside," he interceded and removed Landrum from the house. Lanaras stated he spoke calmly to Landrum stating, "[l]isten, you seem like you're a very tough kid . . . [or] a tough guy. We don't want any of those problems here. Just calm down, take a walk, it'll be fine. We don't want anything bad to happen." Landrum "was calm" and responded, "I got it. I got it. I feel it. I feel you, I respect it."

Rohm, who Lanaras described as "a hot head," came outside and "apologized" and said, "[l]isten, sorry, . . . whatever happened happened but I don't like being punched into," at which point Landrum "punched [Rohm]." Rohm and a group of football players then "started chasing [Landrum] down the street" attempting to assault him. While Landrum was being chased, Lanaras heard him say, "Do you know who I am? I run these streets. I'll come back, shoot you all up."[2]

Lanaras testified that he responded to Landrum's threat by trying to get people back inside the house, including plaintiff. Word spread to Rosche that Rohm kicked someone out of the party who was "going to come back with a gun." Rosche testified that, when he learned of the threat, he did "[n]othing," but "whoever was playing the music" in the basement turned the volume up "so people would bring themselves to the basement." According to Rosche, the fraternity members "were just thinking what [they] could possibly do to not cause a panic." No one called the police.

---

[2] Lanaras clarified that he "heard . . . Landrum say 'I'm going to come back and shoot this place up.'"

Landrum returned approximately ten to twenty minutes later and discharged nine to eleven shots toward the house, two of which hit plaintiff in the abdomen while he was standing on the porch.

Lassoni testified at his deposition that he first became aware that something had happened that night when he "heard a lot of noise" that "sounded similar to fireworks" from his room upstairs. Lassoni stated he sent a group text message to "[a]round [twenty]" fraternity members asking whether someone had shot off fireworks and received no response.

Hernandez testified that he was upstairs with a girl for a period during the party, then came downstairs and someone told him that there was a fight and a bottle broke on the street, but he did not hear that the person was going to come back with a gun until weeks afterward. Instead, he stated he went back upstairs, then "maybe an hour went by . . . [or] [m]aybe a half [hour]" before he heard what sounded like fireworks.

At the time of the party, Sigma Theta Chi was suspended by Kean, meaning the fraternity was "[in]eligible for recruitment [and could] not participate in University[-]wide events mainly geared towards recruitment [or] organize or host any special activities," including parties. The underlying incident that led to the suspension involved the fraternity tweeting a photo of a

"female or females [who] were topless, covering themselves, but [there was] writing on the picture to suggest joining Sigma Theta Chi." Posting such content online was a violation of Kean's Code of Conduct. The "specific code violation [was] related to the organizational name and recruitment activity written on a female's body." The fraternity was also charged with violating the Kean Greek Senate New Member Education Guidelines for admitting unauthorized members. The sanctions imposed included suspension of the organization, community service, and fines. The suspension was effective from March 25, 2014 through July 24, 2015, which spanned three semesters and included the date of the shooting.

Landrum eventually pled guilty to first-degree attempted murder. Although it is unclear from the record why he was at the party, the record indicates he was a gang member who sold cocaine, that someone who lived in the house used cocaine, and an individual interviewed by the police had Landrum's phone number in their contact list.

Plaintiff filed an eight-count complaint in the Law Division alleging: negligence against all defendants; liability under N.J.S.A. 2A:42A-7 against the landlords and tenants of 215 Conant Street; failure to remove residential tenants under N.J.S.A. 2A:18-53 against the landlords; vicarious liability and custodial

liability against Kean, President Farahi, the State, and the fraternity for the acts of Rosche, Hernandez, Lassoni, and other fraternity members, including the unlawful provision of alcohol to minors; premises liability against the fraternity; and assault and battery and intentional infliction of emotional distress against Landrum.

On November 3, 2017, in an oral decision and corresponding orders, the court granted summary judgment to the State, Kean, President Farahi, Maria Rosche, Sigma Theta Chi, Lassoni, Cuadra, Bozgo, and Hernandez. In its oral decision, the court reasoned that it would be inconsistent with negligence principles to impose a duty of care on those defendants because:

> [t]his shooting was an unfor[e]seeable criminal act of a third-party as to most of the defendants. Because it was unfor[e]seeable, Lassoni, who indicated he was . . . with his girlfriend in a bedroom upstairs; Maria Ros[c]he, who is Michael Ros[c]he's mother and was a co-signer on the lease; Hernandez, who testified that he did not hear any threats; the fraternity . . .; and the State and Kean could not be expected to protect plaintiff against a risk of harm[.] [T]herefore, there is no duty that could be imposed. The negligence claims, therefore, against those defendants cannot be sustained as a matter of law.

With respect to the State and Kean, the court, relying on Myers v. Medford Lakes Bd. of Educ., 199 N.J. Super. 511, 515 (App. Div. 1985), noted that the New Jersey Tort Claims Act (TCA), N.J.S.A. 59:1-1 to 12-3, generally "limits

8

and circumscribes governmental tort liability . . . ."  The court further stated that "N.J.S.A. 59:1-2 provides that a public entity shall only be liable for negligence within the limitations of the [TCA] and in accordance with the fair and uniform principles established herein."  Pursuant to N.J.S.A. 59:4-2, the court also stated  that a public entity is liable for injury caused by a condition of its property if plaintiff establishes that "the property was in dangerous condition at the time of the injury, that the injury was proximately caused by the dangerous condition, and that the dangerous [condition] created a reasonably foreseeable risk of the kind of injury which was incurred."

The court emphasized that the location of the incident here "was not public property" as it "was not owned by Kean, . . . was not leased by Kean, [and] . . . was not inspected by Kean."  The court subsequently concluded that, since there was neither legal control, possessory control, nor any use for any purpose of the property by Kean, Kean and the State were "completely immunized from any responsibility . . . ."

Finally, the court denied the application as to Michael Rosche reasoning that he had advance notice of the shooting and thus "arguably" could have

foreseen it.  Plaintiff and Michael Rosche promptly settled.[3]  This appeal followed.

## II.

Plaintiff raises three arguments on appeal.  First, he maintains the court erred in granting summary judgment to Hernandez and Lassoni.  Second, plaintiff claims the trial court erred when it granted summary judgment to the State and Kean as neither entity is immune from liability under the TCA and genuine and material factual questions existed in the motion record as to whether they were negligent in supervising Sigma Theta Chi.  Finally, plaintiff contends it was error to dismiss Sigma Theta Chi as he sufficiently established for purposes of defeating defendants' summary judgment motion that 215 Conant Street was a Sigma Theta Chi fraternity house.  We disagree with plaintiff's first two arguments but vacate the portion of the November 3, 2017 order granting

---

[3] On July 12, 2018, the court issued a judgment of liability against Landrum subject to a damages assessment to be determined at a subsequent proof hearing. We note that the referenced proof hearing was not completed prior to plaintiff filing his notice of appeal.  As the issues on appeal were fully briefed, we exercised our discretion, for purposes of efficiency, and decided to resolve the parties' substantive claims even though the judgment against Landrum was not final.  To the extent the parties challenge further orders of the trial court, they shall ensure that the court has resolved all issues as to all parties, or they shall request interlocutory review of any challenged order.

summary judgment to Sigma Theta Chi Fraternity and Sigma Theta Chi Fraternity, Inc., and remand for further proceedings.

### III.

We need not discuss at length the principle noted, supra, that courts reviewing summary judgment motions must "consider whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." Brill, 142 N.J. at 540; see also R. 4:46-2(c). Although the non-moving party must have "more than a scintilla of evidence" in its favor to defeat the motion, Pressler & Verniero, Current N.J. Court Rules, cmt. 2.1 on R. 4:46-2 (2020), the court's function is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Brill, 142 N.J. at 540 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986)). We review summary judgment rulings de novo, under the same standard governing the motion judge's initial decision. Globe Motor Co. v. Igdalev, 225 N.J. 469, 479 (2016).

To prevail on a negligence claim, "a plaintiff must establish four elements: '(1) a duty of care, (2) a breach of that duty, (3) proximate cause, and (4) actual

damages.'"  Townsend v. Pierre, 221 N.J. 36, 51 (2015) (quoting Polzo v. Cty. of Essex, 196 N.J. 569, 584, (2008)).  Whether a defendant owes a duty of care to another is a question of law to be determined by the trial court.  Carvalho v. Toll Bros. & Developers, 143 N.J. 565, 572 (1996).  Courts must analyze a defendant's duty of care to an individual based on the totality of the circumstances, and considerations of public policy and fairness.  Hopkins v. Fox & Lazo Realtors, 132 N.J. 426, 439 (1993); see also Acuna v. Turkish, 192 N.J. 399, 414 (2007).

There are four factors that must be analyzed when determining whether an individual owes a duty of care toward another: "the relationship of the parties[;] the nature of the attendant risk[;] the opportunity and ability to exercise care[;]" and public policy considerations.  Hopkins, 132 N.J. at 439. This "analysis is both very fact-specific and principled; it must lead to solutions that properly and fairly resolve the specific case and generate intelligible and sensible rules to govern future conduct."  Ibid.  Whether or not a duty should be imposed in a particular situation "is a question of fairness and public policy. Foreseeability of injury to another is important, but not dispositive. Fairness, not foreseeability alone, is the test."  Kuzmicz v. Ivy Hill Park Apts., 147 N.J. 510, 515 (1997) (citations omitted).

The issues raised on this appeal are similar, although not identical, to those addressed by Judge Sabatino in Peguero v. Tau Kappa Epsilon Local Chapter, 439 N.J. Super. 77 (App. Div. 2015). In that case, the court found there was insufficient evidence to give rise to a duty to prevent a shooting at a college party, also hosted by a fraternity at Kean, because there was a lack of evidence of relevant prior conduct that would have alerted the fraternity members "that an unknown third-party would pull out a gun and shoot at another guest." Id. at 92. We also noted that there was no evidence anyone observed the shooter with "a gun, drinking heavily, acting belligerently, or otherwise displaying a volatile or dangerous propensity" before the shooting. Id. at 93. The Peguero court stated that although the evidence showed the premises were "crowded and evidently a copious amount of beer was flowing, there was no proven or reasonably foreseeable link between those factors and the sudden discharge of a handgun," and concluded that based on the totality of the circumstances there was no duty owed to prevent the shooting as it was not reasonably foreseeable. Ibid.

As noted, the court denied Rosche's summary judgment motion because the record supported the conclusion that he heard Landrum announce he was going to "shoot this place up" and did "nothing" except "shepherd partygoers

into the basement of the property by asking the D.J. to play the music louder."

Plaintiff argues that "there [was similarly] a genuine issue of material fact as to whether or not [Hernandez and Lassoni], who were present at the house when Landrum threatened to shoot up the party, [also] heard Landrum make the threat or otherwise knew that he made the threat." We disagree.

A fair and complete reading of Lassoni's and Hernandez's deposition testimony supports the court's conclusion that they were not aware of Landrum's pronouncement before he returned and began to shoot at the house.[4] Confronted by this testimony, plaintiff essentially argues that a jury, upon observing Lassoni and Hernandez testify, could nevertheless disbelieve them and find that those defendants had prior knowledge of Landrum's threat. Such speculation is simply insufficient to survive a motion for summary judgment.

We also reject any claim that Hernandez or Lassoni are liable to plaintiff based on principles of premises liability, "a subset of general negligence law." Peguero, 439 N.J. Super. at 88. To support this point, plaintiff maintains that Hernandez and Lassoni assumed liability for Landrum's attempted murder based

---

[4] We also note that at a November 3, 2017 hearing, plaintiff's counsel candidly conceded that he did not "have anything to offer to the [c]ourt . . . to specifically indicate that Mr. Hernandez heard the threat."

on a provision in the lease agreement. Paragraph 22 of the residential lease provides:

> LIABILITY OF LANDLORD AND TENANT: The Landlord is not legally responsible for any loss, injury or damage to any person or property unless such loss, injury or damage is directly caused by the Landlord's negligence. The Tenant is legally responsible for loss, injury or damage to any person or property caused by the negligence of the Tenant, the Tenant's family members, domestic employees, guests or visitors.

According to plaintiff, paragraph 22 makes it "clear that the parties agreed that the tenants would be responsible for any injuries caused by the tortious acts of a guest or visitor on the premises." Thus, plaintiff contends, "under the express terms of the lease agreement," Hernandez and Lassoni "are legally responsible for [plaintiff's] injuries[,] which were caused by Shaquan Landrum's actions," since Landrum was "admitted to the party and was actually inside the house, [and] was a guest, or in the alternative, a visitor of the tenants."

Although "a landowner generally has a duty to maintain the safe condition of its property for the protection of persons who lawfully enter the premises," id. at 89, "[i]t has historically been held that individuals, including business premises owners, are not generally responsible for the criminal acts of others," Estate of Desir v. Vertus, 214 N.J. 303, 318 (2013); see also Restatement (Second) of Torts § 344 cmt. f (Am. Law Inst. 1965).

15

Our Supreme Court has adopted the "totality of the circumstances" analysis recited in the Restatement of Torts to determine premises liability for an alleged failure to prevent third-party criminal conduct. Clohesy v. Food Circus Supermarkets, Inc., 149 N.J. 496, 507 (1997). The Restatement explains the pertinent considerations and analysis:

> Since the possessor is not an insurer of the visitor's safety, he is ordinarily under no duty to exercise any care until he knows or has reason to know that the acts of the third person are occurring or are about to occur. He may, however, know or have reason to know, from past experience, that there is a likelihood of conduct on the part of third persons in general which is likely to endanger the safety of the visitor, even though he has no reason to expect it on the part of any particular individual. If the place or character of his business, or his past experience, is such that he should reasonably anticipate careless or criminal conduct on the part of third persons, either generally or at some particular time, he may be under a duty to take precautions against it, and to provide a reasonably sufficient number of servants to afford a reasonable protection.
>
> [Restatement (Second) of Torts, § 344 cmt. f.]

Here, we conclude, consistent with the trial and Peguero courts, that Landrum's shooting was not reasonably foreseeable. The record is bereft of evidence showing Landrum had a history of violence or engaged in conduct prior to the alleged assault making it reasonably foreseeable that he would harm plaintiff. In fact, the motion record establishes that neither Hernandez nor

16

Lassoni knew Landrum, specifically invited him to the party, were aware of his gang affiliation or, most importantly, knew that he threatened to return to the party and "shoot [the] place up." And, although the motion record would support the conclusion that the guests were consuming alcohol, there is no evidence Landrum consumed any alcohol while at 215 Conant Street, was under the influence of alcohol when the assault occurred, or that the consumption of alcohol, or the circumstances surrounding the fraternity's suspension played any role in Landrum's intentional act and plaintiff's subsequent injuries. See id. at 92-93.

Plaintiff's evidence "does not come close to the sort of proof" required to establish that either Hernandez or Lassoni had a duty to prevent the assault on plaintiff. Id. at 92; see also Butler v. Acme Mkts., Inc., 89 N.J. 270, 280-82 (1982) (finding duty to provide security for, or warnings to, store patron injured during an attack in the store's parking lot based on history of muggings on the premises). Having determined that neither Hernandez nor Lassoni were negligent, paragraph 22 of the lease agreement cannot, by its clear terms, impose liability for an intentional act such as Landrum's attempted murder. See Price v. Phillips, 90 N.J. Super. 480, 485-86 (App. Div. 1966) (stating that "negligence excludes the idea of intentional wrong") (quotation omitted). Accordingly, we

A-5570-17T4

conclude the court correctly granted summary judgment to Hernandez and Lassoni.

IV.

Plaintiff next maintains that a genuine issue of material fact exists as to whether Kean was negligent in failing to enforce the suspension of Sigma Theta Chi and whether that negligence proximately caused plaintiff's injuries. Further, plaintiff argues that genuine and material factual questions exist as to whether Sigma Theta Chi's affiliation with Kean qualified as an agency relationship that would subject Kean to liability for plaintiff's injuries.

Specifically, plaintiff argues that Kean was negligent when it breached a duty to plaintiff by failing to enforce its sanctions by way of monitoring off-campus private residences leased to students. In this regard, plaintiff contends "Kean University is liable under a theory of negligence due to its failure to supervise and enforce sanctions on a fraternity which the University itself promoted and encouraged students to join" and that Kean had a "duty to supervise its fraternities," and breached that duty by "ignoring the illegal and dangerous activity going on at the Sigma Theta Chi [h]ouse, and whether that

negligence ultimately led to a for[e]seeable and violent assault is an issue of fact for a jury to decide." We disagree.[5]

The parties do not dispute that as public entities, the TCA governs the dispute among plaintiff, the State, and Kean. N.J.S.A. 59:1-1 to 12-3. "The TCA provides general immunity for all governmental bodies except in circumstances where the Legislature has specifically provided for liability." Caicedo v. Caicedo, 439 N.J. Super. 615, 623 (App. Div. 2015) (quoting Kain v. Gloucester City, 436 N.J. Super. 466, 473 (App. Div. 2014)). As such, "the TCA's dominant theme is immunity, with liability as the exception." Ibid. (citing D.D. v. Univ. of Med. & Dentistry of N.J., 213 N.J. 130, 134 (2013)).

"Even if liability exists, '[c]ourts must recognize[] the precedence of specific immunity provisions, and ensure the liability provisions of the Act will not take precedence over specifically granted immunities.'" Patrick ex rel. Lint v. City of Elizabeth, 449 N.J. Super. 565, 572 (App. Div. 2017) (alterations in original) (quoting Parsons v. Mullica Twp. Bd. of Educ., 440 N.J. Super. 79, 95 (App. Div. 2015)). Accordingly, to determine whether a public entity is

---

[5] In plaintiff's Notice of Appeal, he identifies the November 3, 2017 order granting summary judgment to the State. His merits brief, however, fails to address his claims against the State but focuses instead on the liability of Kean. We nevertheless address plaintiff's claims against the State to the extent he seeks to hold it liable for the actions of Kean or its employees.

immune, "courts should employ an analysis that first asks, 'whether an immunity applies and if not, should liability attach.'" Bligen v. Jersey City Hous. Auth., 131 N.J. 124, 128 (1993) (quoting cmt. on N.J.S.A. 59:2-1(a)). The burden of proof rests on the public entity to establish immunity. Caicedo, 439 N.J. Super. at 623 (quoting Kain, 436 N.J. Super. at 473). "Where a public entity is immune from liability for injury, so too is the public employee." Id. at 624 (citing N.J.S.A. 59:3-1(c)).

A public employee is liable for an injury caused by his or her acts or omissions to the same extent as a private person unless there is a specific immunity granted by the TCA. N.J.S.A. 59:3-1(a). Likewise, "[a] public entity is liable for injury proximately caused by an act or omission of a public employee within the scope of his [or her] employment in the same manner and to the same extent as a private individual under like circumstances." N.J.S.A. 59:2-2(a); see also Tice v. Cramer, 133 N.J. 347, 355 (1993) ("The primary liability imposed on public entities is that of respondeat superior: when the public employee is liable for acts within the scope of that employee's employment, so too is the entity . . . .")

Plaintiff argues that Peguero is inapposite because Kean was not a named defendant in that case, but nevertheless maintains that Peguero put Kean on

20

notice of potential shootings at fraternity parties "where alcohol was abundantly available to all and there was no supervision or monitoring of the fraternity house." Thus, plaintiff argues, "the previous shooting in Peguero actually made this shooting more foreseeable." We acknowledge that Peguero gave Kean notice that a shooting previously occurred at an off-campus party hosted by fraternity members at a private residence. We disagree, however, with plaintiff's claim that this fact warranted imposition of a duty on Kean to take active measures to protect plaintiff from an act of attempted murder at 215 Conant Street.

Weighing the Hopkins factors, we conclude Kean did not owe a duty to plaintiff under the totality of the circumstances. As in Peguero, the risk of a shooting by a third party is not typically "associated with a social gathering of this nature." 439 N.J. Super. at 94. Further, Kean did not have knowledge that the party occurred until after the incident. As such, Kean had no opportunity or ability to exercise care.

Moreover, since the shooting in Peguero occurred, almost two full classes graduated, and the shooting did not involve the same residence, fraternity, or location. As such, public policy considerations militate against imposing a duty of care where plaintiff has not established that Kean knew, or should have

known, of a possible shooting at the Sigma Theta Chi residence. Accordingly, we conclude it was not negligent under the circumstances and hence had no liability under the TCA.[6]

Plaintiff, alternatively, argues that even if the public entities were not themselves negligent, they are nevertheless "vicariously liable for the negligent actions of Sigma Theta Chi and its members." According to plaintiff, "because of the extent to which Kean University promoted its fraternities including Sigma Theta Chi, Sigma Theta Chi and its individual members were apparent agents of Kean since a prudent person would have been justified in assuming that the fraternity and its members were acting on behalf of Kean University." Again, we disagree.

An agency relationship may be established through evidence of "apparent authority" to act on behalf of another. See Sears Mortg. Corp. v. Rose, 134 N.J. 326, 343-44 (1993). However, it only "arises when a principal 'acts in such a manner as to convey the impression to a third party that the agent has certain power which he may or not possess.'" Lobiondo v. O'Callaghan, 357 N.J. Super

---

[6] Because we have concluded that neither the State nor Kean, nor any of their employees or agents, were negligent, we need not address the applicability of any specific immunity under the TCA. See N.J.S.A. 59:2-2(b); N.J.S.A. 59:3-1(b).

488, 497 (App. Div. 2003) (quoting Rodriguez v. Hudson Cty. Collision Co., 296 N.J. Super. 212, 220 (App. Div. 1997)). The question is "whether the principal has by [its] voluntary act placed the agent in such a situation that a person of ordinary prudence, conversant with business usages and the nature of the particular business, is justified in presuming that such agent has authority to perform the particular act in question . . . ." Ibid. (quoting Legge, Indus. v. Kushner Hebrew Acad., 333 N.J. Super. 537, 560 (App. Div. 2000)). "[A] court must examine the totality of the circumstances to determine whether an agency relationship existed even though the principal did not have direct control over the agent." AMB Prop., LP v. Penn Am. Ins. Co., 418 N.J. Super. 441, 454 (App. Div. 2011) (quoting Sears Mortg. Corp., 134 N.J. at 338).

Plaintiff attempts to establish Kean's apparent authority over Sigma Theta Chi by relying on a flyer that Kean posted for an introductory event (unrelated to the party at issue) called "Meet the Greeks." The flyer provided:

> Greek Life at Kean University serves to promote student development by providing opportunities for s[c]holarship, leadership, community service, campus involvement and fraternal friendship by ensuring all members a high-quality and safe undergraduate experience. Their organizational ideals and goals promote personal development and a strong sense of identity with the institution.

23

Plaintiff claims he relied to his detriment on Kean's representation that fraternities offer a "safe undergraduate experience." At the outset, we note that the flyer only speaks of "ensuring all members" of a fraternity a "safe undergraduate experience," and plaintiff was not a "member" of Sigma Theta Chi. Even if we were to assume the flyer could be interpreted to apply to plaintiff as a social guest, we discern nothing in that document that would create a genuine and material factual question that Kean or the State acted as principals of Sigma Theta Chi warranting imposition of liability on an agency, respondeat superior or vicarious liability theory.

Further, even were we to assume that Kean exercised a certain degree of oversight over Sigma Theta Chi as it did with other university groups, that fact alone does not support a finding that Kean's conduct created an appearance of authority as a principal of Sigma Theta Chi or that it had any involvement with the activities at 215 Conant Street. The summary judgment record, in fact, supports a contrary conclusion.

As noted, the off-campus residence at which the shooting took place was privately owned and had no legal connection to Kean. Moreover, included in the sanctions relating to Kean's suspension of Sigma Theta Chi was a provision prohibiting it from "organiz[ing] or host[ing] any special activities," including

24

parties. That sanction, coupled with testimony indicating that Kean did not have knowledge of the party prior to the shooting, supports the trial court's determination that an agency relationship, actual or apparent, failed to exist between Sigma Theta Chi and Kean or the State. Finally, we conclude that any reliance by plaintiff that Sigma Theta Chi was an agent of Kean or the State of New Jersey was unsupported by the record and unreasonable under the circumstances.

V.

In his final point, plaintiff contends the court erred when it granted summary judgment to Sigma Theta Chi as material and genuine factual questions existed as to whether 215 Conant Street was a Sigma Theta Chi fraternity house. Plaintiff further maintains that "Rosche held himself out as a representative of the fraternity at a party, which was being hosted by fraternity members at a fraternity house, and which people understood to be a fraternity event." Therefore, plaintiff contends, "[b]ecause [s]ummary [j]udgment was denied to Michael Rosche, an apparent agent of Sigma Theta Chi, [s]ummary [j]udgment should also have been denied to Sigma Theta Chi itself." We agree with plaintiff only to the extent that the court's decision dismissing Sigma Theta Chi failed to

address its previous findings against Rosche and the Sigma Theta Chi defendants separately.

At a September 15, 2017 hearing, the court found that "[t]here [was] a question of fact as to whether" the party "was a fraternity party or just a party hosted by the occupants of the property." After stating that "for purposes of the argument here," which was whether other defendants owed a duty under Peguero, the court "accept[ed] as true that this house was used as a fraternity house." The court did not make a contrary pronouncement at the two subsequent hearings, and we agree with plaintiff that such a factual question existed at the time of the Sigma Theta Chi defendants' motion.

Further, at the November 3, 2017 hearing, the court found "[i]t is at least arguable, for summary judgment purposes, that plaintiff's injury . . . was at least arguably for[e]seeable as to Michael Ros[c]he," who "admitted . . . that he heard from a fellow fraternity member, namely Paul R[ohm], that Landrum threatened to come back to the party and 'shoot up the place,'" and concluded that "plaintiff's claim for negligence against [Rosche] may proceed." Nonetheless, as noted, the court determined that the shooting "was unfor[e]seeable" with respect to "Sigma Theta Chi, [and] Sigma Theta Chi, Inc.," and granted summary judgment to those two defendants.

Here, the court accepted as true that the shooting occurred at a fraternity house during a fraternity party where fraternity members had advance knowledge of the shooting. The court concluded, however, that the shooting was not foreseeable by the fraternity, and the fraternity was not liable for Rosche's arguable negligence. The court did not provide any reasoning for its conclusions that Rosche's (or Rohm's or Lanaras') knowledge would not impute to the fraternity, or that the fraternity would not be liable for Rosche's negligence under an agency or vicarious liability basis.[7] Nor did the court distinguish between Sigma Theta Chi Fraternity and Sigma Theta Chi Fraternity, Inc., and the record on appeal fails to explain sufficiently the relationship between those entities.[8]

---

[7] We acknowledge that the imposition of liability under an agency or vicarious liability basis is not limitless. We conclude, however, that the trial court, in the first instance, should make the necessary factual findings on the issue. See, e.g., Price v. Himeji, LLC, 214 N.J. 263, 294-95 (2013); Brunswick Bank v. Heln Mgmt., 453 N.J. Super. 324, 334 (App. Div. 2018).

[8] The lack of clarity regarding the relationship between Sigma Theta Chi Fraternity and Sigma Theta Chi Fraternity, Inc., was a product, in part, of those defendants' failure to submit a specific merits brief on appeal, instead choosing to rely upon the submissions of other parties. That practice was inappropriate here as the liability of the fraternity defendants differ, in part, from those of Lassoni, Hernandez, the State, and Kean.

## VI.

In sum, we affirm the court's November 3, 2017 decision dismissing Kean, the State of New Jersey, Hernandez, and Lassoni.  We vacate, however, the portion of the November 3, 2017 order that granted summary judgment to Sigma Theta Chi Fraternity and Sigma Theta Chi Fraternity, Inc., and remand for further proceedings, the scope of which we leave to the trial court's discretion.  On remand, the court should first determine the relationship between Sigma Theta Chi Fraternity and Sigma Theta Chi Fraternity, Inc.  The court should then determine whether either entity is liable under an agency, vicarious liability, or other basis, for the actions of its members who were aware of the threat Landrum made.[9]  We stress that nothing in our opinion should be

---

[9] By way of example only, we acknowledge case law holding that under certain factual circumstances, fraternities' national affiliates have been deemed not liable for actions involving local chapters.  See, e.g., Peguero, 439 N.J. Super. at 80; Garofalo v. Lambda Chi Alpha Fraternity, 616 N.W.2d 647, 654 (Iowa 2000) (holding national affiliate had no duty in wrongful death action where new member died after excessively consuming alcohol); Rogers v. Sigma Chi Int'l Fraternity, 9 N.E.3d 755, 765 (Ind. Ct. App. 2014) (granting summary judgment to national affiliate where the assault of one party guest by another was unforeseeable); Colangelo v. Tau Kappa Epsilon Fraternity, 205 Mich. App. 129 (1994) (concluding national affiliate did not owe a duty relating to a drunk driving accident after all parties involved were coming from a party hosted by the local chapter).  On remand, the court should clarify if Sigma Theta Chi Fraternity, Inc., is a national affiliate, or an unaffiliated local chapter, and if a

interpreted as expressing our view on the result of the remanded proceedings.

Affirmed in part, vacated in part, and remanded for further proceedings. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

genuine and material factual question exists warranting the potential imposition of liability upon it.