**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3842-23

MARGARET A. KELLY, as
Guardian Ad Litem for REBECCA
KELLY, REBECCA KELLY,
individually, and MARGARET A.
KELLY, individually,

      Plaintiffs-Appellants,

v.

BACK OF BAY CONDOMINIUM
ASSOCIATION, INC., BACK OF
BAY OF WILDWOOD
CONDOMINIUM ASSOCIATION
INC., CITY OF WILDWOOD,
CITY OF WILDWOOD MUNICIPAL
UTILITY AUTHORITY, CITY OF
WILDWOOD WATER UTILITY,
CITY OF WILDWOOD SEWER
UTILITY, COUNTY OF CAPE
MAY, and CAPE MAY COUNTY
MUNICIPAL UTILITIES
AUTHORITY,

      Defendants-Respondents.

_____

Argued January 20, 2026 – Decided February 19, 2026

Before Judges Natali and Walcott-Henderson.

On appeal from the Superior Court of New Jersey, Law Division, Cape May County, Docket No. L-0246-22.

Tommie Ann Gibney argued the cause for appellants (Stark & Stark, PC, attorneys; Tommie Ann Gibney, of counsel and on the brief).

Edward N. Romanik argued the cause for respondents City of Wildwood, City of Wildwood Municipal Utility Authority, City of Wildwood Water Utility, and City of Wildwood Sewer Utility (Madden & Madden, attorneys; Edward N. Romanik, on the brief).

PER CURIAM

Plaintiff Margaret A. Kelly, as Guardian ad litem for Rebecca Kelly, appeals from a July 22, 2024 order granting summary judgment to the City of Wildwood ("the City"), City of Wildwood Municipal Utility Authority, City of Wildwood Water Utility, and City of Wildwood Sewer Utility (collectively "the Wildwood defendants") pursuant to the New Jersey Tort Claims Act ("TCA"), N.J.S.A. 59:1-1 to 12-3.[1]  Discerning no error on the part of the court, we affirm.

---

[1] Plaintiff dismissed her complaint against Cape May County Municipal Utility Authority and Back of Bay of Wildwood Condominium Association (without prejudice).  Plaintiff also reached a negotiated settlement with Back of Bay Condominium Association, thus, this appeal is solely from the order granting summary judgment in favor of the Wildwood defendants.

2

The relevant facts are not in dispute. Rebecca Kelly is a disabled individual with osteogenesis imperfecta, also known as "brittle bone disease." Kelly was the guest of her parents at Back of Bay Condominium Association (Back of Bay) in Wildwood, when she fell in a trash collection and utility common area exterior to the condominium unit owned by her parents. At the time of her accident, Kelly was carrying a recycling container in both hands, attempting to place it in this area, when she fell. Kelly later testified she fell when she stepped on one of six water meter pits in that area, causing the lid to dislodge and her foot to fall into the pit.

Neighbors called 911 and Kelly was subsequently transported to the hospital for further evaluation. Kelly was diagnosed with injuries to her left foot and ankle, including a comminuted displaced, intraarticular fracture of the posterior talus, lateral talus and calcaneus of her left foot, which required open reduction and internal fixation surgery to insert a plate and multiple screws. Kelly was also diagnosed with a complete tear of the left shoulder, subscapularis tendon with retraction to the glenoid, resulting in subscapularis insufficiency and possible recurrent anterior subluxations. She was treated with multiple pain

A-3842-23

management injections and may require additional surgeries in the future. Kelly additionally underwent a second surgery to remove the surgical hardware.

Within weeks of Kelly's accident, Timothy R. Armand, Senior Meter Reader and Water Inspector for the City of Wildwood, reported to the condominium's utility area to observe where Kelly fell.[2] Upon arrival, Armand noted:

> I saw earlier a hole with a transmitter. That's not what I found. I found a lid on it that . . . had a frozen nut. It wouldn't allow the lid to be locked down by whoever was last in there. So it was sitting up there a little unstable, and that, to me, is a trip hazard. So I took it away, put it on the truck and put a new lid in.

On July 13, 2022, plaintiff filed an eleven-count complaint alleging negligence against multiple defendants, including Back of Bay and the Wildwood defendants. Plaintiff averred that Kelly was lawfully on the condominium premises when she was caused to fall and that at all times relevant, the Wildwood defendants were individually "responsible for the maintenance, design, installation, construction, inspection, repair, condition and/or supervision of utility lids."

---

[2] Both parties agree that McIntyre sent Armand to inspect the utility area in response to receiving the Tort Claims Notice.

A-3842-23

A period of discovery ensued, which included the depositions of plaintiff, Kelly's father and owner of the condominium unit, Armand, and Michael McIntyre. Kelly testified that when she stepped on the meter pit, the lid dislodged and moved to the side, causing her foot to enter the water meter pit. She explained that she "didn't move it. It moved on its own when [she] fell." She further testified that as a result of the loose pit cover, she fell backwards onto her shoulder and her left foot entered the water meter pit.

McIntyre, the Water Director for the City, testified for the City and admitted that the City owns the transmitter located on top of the lid and that the water meter pit and equipment in question was last replaced in 2007. He explained that loose or missing water meter pit lids pose a recognized danger, and that City employees were specifically trained to replace or secure these lids with spare ones, which were routinely kept on water utility trucks. He further testified that the water meter pit lids "have software or machines that pick up the reads" from the meter and transfers the information remotely to staff as they ride up and down the street.[3] According to McIntyre, remote meter reading

---

[3] At the time of Kelly's accident, the Back of Bay meter readings were completed by water department staff remotely using software that allowed them to scan transmitters located on the top of the water pit lids with their City-issued devices.

A-3842-23

eliminates the need for quarterly on-site inspections of each meter and is both faster and more cost-effective.

Armand, the City employee who reported to the scene after Kelly fell, testified in his deposition that the meters are read electronically on a quarterly basis. He also testified that on September 29, 2020, when he reported to the location where Kelly fell, he observed that the lid had a frozen nut, which would not allow the lid to be locked down, so he replaced the lid and secured it.

In May 2024, the Wildwood defendants moved for summary judgment seeking dismissal of all claims and cross-claims, which was opposed by plaintiff. Following oral argument, the motion judge found plaintiff conceded there was no evidence of actual notice of the alleged dangerous condition posed by the water meter pit and failed to establish constructive notice as required under the TCA, improperly conflating a general duty to maintain with notice of a specific dangerous condition.

The court further found the Wildwood defendants' conduct was not palpably unreasonable, characterizing the Wildwood defendants' actions in transitioning to electronic meter reading as a "discretionary decision, about how they're going to allocate their resources." The motion judge further concluded that "[b]ecause it's discretionary . . . I can't find anything to indicate that [the]

6

decision was palpably unreasonable." The court granted summary judgment to Back of Bay and the Wildwood defendants, dismissing all remaining claims and cross-claims with prejudice. This appeal followed.

II.

We conduct a de novo review of an order granting summary judgment, Globe Motor Co. v. Igdalev, 225 N.J. 469, 479 (2016), and apply the same standard as the trial court, State v. Perini Corp., 221 N.J. 412, 425 (2015). In considering a summary judgment motion, we "must view the facts in the light most favorable to the non-moving party, which in this case is plaintiff." Bauer v. Nesbitt, 198 N.J. 601, 604 n.1 (2009) (first citing R. 4:46-2(c); and then citing Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995)). Summary judgment is proper if the record demonstrates "no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment . . . as a matter of law." Burnett v. Gloucester Cnty. Bd. of Chosen Freeholders, 409 N.J. Super. 219, 228 (App. Div. 2009) (quoting R. 4:46-2(c)).

With respect to the TCA, we are mindful "the Legislature provided that public entities could only be held liable for negligence 'within the limitations of [the TCA].'" Stewart v. N.J. Tpk. Auth., 249 N.J. 642, 655 (2022) (alteration in original) (quoting N.J.S.A. 59:1-2). "[T]he 'guiding principle' of the [TCA] is

7

'that immunity from tort liability is the general rule and liability is the exception.'" D.D. v. Univ. of Med. & Dentistry of N.J., 213 N.J. 130, 134 (2013) (quoting Coyne v. Dep't of Transp., 182 N.J. 481, 488 (2005)) (additional quotations omitted).

Further, under the TCA, a public entity may be liable for personal injury caused by the "dangerous condition" of its public property. N.J.S.A. 59:4-2. "The applicable standards for dangerous condition liability under the TCA are well established. To recover for an injury under the general liability section of the TCA, N.J.S.A. 59:4-2, a plaintiff must prove several elements." Estate of Massi v. Barr, 479 N.J. Super. 144, 156 (App. Div. 2024). The statute provides:

> A public entity is liable for injury caused by a condition of its property if the plaintiff establishes that [(1)] the property was in dangerous condition at the time of the injury, [(2)] that the injury was proximately caused by the dangerous condition, [(3)] that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred, and [(4)] that either:
>
> a. a negligent or wrongful act or omission of an employee of the public entity within the scope of his employment created the dangerous condition; or
>
> b. a public entity had actual or constructive notice of the dangerous condition under [N.J.S.A.] 59:4-3 a sufficient time prior to the injury to have taken measures to protect against the dangerous condition.

Nothing in this section shall be construed to impose liability upon a public entity for a dangerous condition of its public property if the action the entity took to protect against the condition or the failure to take such action was not palpably unreasonable.

[N.J.S.A. 59:4-2.]

To plead a prima facie case under the TCA, plaintiff must show: (1) the area where Kelly fell was in a "dangerous condition" at the time of her fall; (2) the injury was proximately caused by the dangerous condition; (3) the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred; and (4) either that a wrongful act or omission of a defendant employee, acting within the scope of employment, created the dangerous condition, or that defendants had actual or constructive notice of the dangerous condition and sufficient time prior to the injury to protect against it. N.J.S.A. 59:4-2. Additionally, plaintiff must show that defendants' action or inaction regarding the allegedly dangerous condition was "palpably unreasonable." Ibid.

III.

Before us, plaintiff challenges the court's grant of summary judgment, arguing "[i]t does not serve the public interest that the public entity defendants are not responsible for maintaining property the city owns, controls or maintains." Plaintiff further argues "[i]t is uncontested that the locking nut on

the subject water meter pit was 'frozen,' and the lid was loose and unstable when Kelly encountered it." Plaintiff also cites to the City ordinances and practices, including that water utility employees "were trained that if they encountered a missing or loose lid, they were to secure or replace it because it was a tripping hazard," and that they "traveled with spare lids in their vehicles for that specific purpose."

A.

As a preliminary matter, because plaintiff acknowledges the Wildwood defendants lacked actual notice of the dangerous condition created by the loose water meter pit lid, we confine our analysis primarily to whether plaintiff established constructive notice of the alleged dangerous condition under the TCA. It is well settled that N.J.S.A. 59:4-2(b) requires public entities to have notice of the dangerous condition within "a sufficient time prior to the injury to have taken measures to protect against the dangerous condition." See Polzo v. Cty. of Essex, 196 N.J. 569, 585 (2008). A public entity is placed on constructive notice "when a dangerous condition is 'obvious' and has existed 'for such a period of time' that the public entity should have discovered it through the exercise of reasonable care." Polzo v. Cty. of Essex, 209 N.J. 51, 67 (2012) (quoting N.J.S.A. 59:4-3(a)).

A-3842-23

Here, having conducted a de novo review of the record, we conclude plaintiff failed to establish that the Wildwood defendants had constructive notice of the alleged dangerous condition that caused Kelly to fall in order to satisfy the TCA's rigorous requirements. In addressing this issue, plaintiff asserts that Chapter 10 of the City's ordinances,[4] internal policies on lid safety, and the replacement of the frozen nut support a reasonable inference that unsafe conditions were readily observable and existed for a sufficient period of time to establish constructive notice.

First, although the Wildwood defendants conceded that a loose pit lid presents a danger, it is well-settled that "[t]he mere '[e]xistence of an alleged dangerous condition is not constructive notice of it.'" Arroyo v. Durling Realty, LLC, 433 N.J. Super. 238, 243 (App. Div. 2013) (second alteration in original) (quoting Sims v. City of Newark, 244 N.J. Super. 32, 42 (Law Div. 1990)). On this point, we note the absence of any proofs showing Kelly, her family members, or any Back of Bay residents had reported or complained about a loose or unsecured meter pit lid prior to Kelly's fall. As the court astutely noted, "[w]e don't know if the lid was loose for an hour before she fell in. Was it loose . . .

_____

[4] We glean from the record that plaintiff is referring to Sections under Chapter 10 of the City Code, which governs the installation, maintenance and control of water meter pits.

within the week? . . . . the month . . . . the year . . . . We have no idea when that lid became loose." Further, we are unconvinced that a genuine and material question of fact exists on the issue of notice based on the indeterminant period of time that the nut was frozen on the lid without additional proofs.

We similarly reject plaintiff's assertion that constructive notice may be imputed to the Wildwood defendants based on their duty to "inspect, detect and correct missing and loose lids." As the motion judge correctly explained, plaintiff's argument relies on a misinterpretation of the applicable law and is essentially one that would impose strict liability on the part of the Wildwood defendants for any injuries that arise from any sort of dangerous condition that exists on the property. We discern such an interpretation of the TCA is antithetical to its statutory purpose: to "'provide[] general immunity for all governmental bodies except in circumstances where the Legislature has specifically provided for liability.'" Caicedo v. Caicedo, 439 N.J. Super. 615, 623 (App. Div. 2015) (quoting Kain v. Gloucester City, 436 N.J. Super. 466, 473 (App. Div. 2014)). As such, "the TCA's dominant theme is immunity, with liability as the exception." Ibid. (first citing D.D. v. Univ. of Med. & Dentistry of N.J., 213 N.J. 130, 134 (2013); and then citing Rochinsky v. Dep't of Transp., 110 N.J. 399, 408 (1988)). We therefore agree that the existence of a general

duty, policy, or training for public utility employees is insufficient to satisfy the notice requirements of the TCA under the circumstances presented. See DeBonis v. Orange Quarry Co., 233 N.J. Super. 156, 170-71 (App. Div. 1989) (holding that a county's general duty to limit hazards on a public road was insufficient to establish constructive notice on its own).

B.

We next address plaintiff's contention "[t]he failure of the City to ensure that its water utility employees discharge their duties to inspect water meter pits to detect and correct recognized conditions . . . was palpably unreasonable." Because we have concluded plaintiff did not establish that the Wildwood defendants had constructive notice of the loose water pit lid, the City's failure to repair it prior to Kelly's fall cannot be viewed as palpably unreasonable conduct.

The term "palpably unreasonable" implies "behavior that is patently unacceptable under any given circumstance." Muhammad v. N.J. Transit, 176 N.J. 185, 195 (2003) (citations omitted); see also Ogborne v. Mercer Cemetery Corp., 197 N.J. 448, 459 (2009) (to constitute "palpably unreasonable" conduct, "it must be manifest and obvious that no prudent person would approve of [the] course of action or inaction"). Whether the public entity's behavior was palpably unreasonable is generally a question of fact for the jury. See Vincitore v. N.J.

Sports & Exposition Auth., 169 N.J. 119, 130 (2001). However, a determination of palpable unreasonableness, "'like any other fact question before a jury, is subject to the court's assessment whether it can reasonably be made under the evidence presented.'" Maslo v. City of Jersey City, 346 N.J. Super. 346, 351 (App. Div. 2002) (quoting Black v. Borough of Atl. Highlands, 263 N.J. Super. 445, 452 (App. Div. 1993)). Accordingly, "the question of palpable unreasonableness may be decided by the court as a matter of law in appropriate cases." Id. at 350 (citing Garrison v. Twp. of Middletown, 154 N.J. 282, 311 (1998)).

Just as the mere existence of a defect or allegedly dangerous condition is insufficient to establish constructive notice, it follows that, absent actual or constructive notice, the Wildwood defendants cannot be found to have acted in a palpably unreasonable manner. See id. at 350-51. Equally as important, after our de novo review of the motion record, we discern no other facts that create a genuine and material factual question to support the conclusion that the Wildwood defendants' conduct was palpably unreasonable.

C.

Finally, plaintiff argues "[m]inisterial acts of the public entity defendants are not shielded by qualified immunity; only discretionary acts can be." Plaintiff

14

further asserts the court "erroneously assumed facts not in evidence when it determined that the actions of City employees were discretionary and not palpably unreasonable." In light of our decision that the Wildwood defendants did not have constructive notice of the defect and, in any event, their conduct was not palpably unreasonable, we need not, and do not, address the court's alternative finding that their actions were protected by the doctrine of qualified immunity.

To the extent we have not specifically addressed any remaining issues raised by plaintiff, it is because it lacks sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

M.C. Harley

Clerk of the Appellate Division

15                                                              A-3842-23